FRAZIER et al. v. SOUTHERN LOAN & TRUST CO.

(Circuit Court of Appeals, Fourth Circuit. February 19, 1900.)

No. 334.

1. BANKRUPTCY—JURISDICTION—PROPERTY IN POSSESSION OF STATE COURT.
   Judgment creditors brought suit in a state court of competent jurisdiction against their debtor and against his assignee for the benefit of creditors, assailing the assignment as fraudulent and void, and a receiver was appointed to take possession of the property. More than four months thereafter the debtor was adjudged bankrupt. Subsequently the state court rendered a decree avoiding the assignment, establishing the liens of the plaintiffs on the property affected, and ordering the sale of the same by a commissioner appointed for the purpose. The court of bankruptcy afterwards made an order requiring the bankrupt to surrender the property to his trustee, enjoining the sale by the commissioner, and directing a sale by the trustee instead. *Held*, that such order was an unwarranted interference with the jurisdiction of the state court and its possession and control of the property in question, and must be revoked.

2. SAME—POSSESSION OF RECEIVER.
   The fact that the receiver had not acquired actual possession of the property would not justify such an order of the court of bankruptcy, for the order appointing the receiver brought the property within the custody and control of the state court.

3. SAME—CONCLUSIVENESS OF DECREE.
   The validity of a decree of a state court rendered in a suit by judgment creditors against their debtor and his assignee, setting aside the assignment as fraudulent and void, establishing the liens of the plaintiffs on the property, and ordering its sale, cannot be impeached by the debtor's trustee in bankruptcy, in a proceeding in the court of bankruptcy to obtain possession of the property and have it sold by the trustee, on the ground of fraud and collusion between the parties in the suit in the state court, where the trustee had opportunity to intervene in such suit, and there allege such fraud.

On Petition to Superintend and Revise, in Matter of Law, Proceedings of the District Court of the United States for the Western District of North Carolina, at Greensboro, in the Matter of the Estate of D. W. C. Benbow, Bankrupt.

James T. Morehead and R. R. King (King & Kimball, on the brief), for petitioners.

John N. Wilson and E. K. Bryan (John Sprunt Hill, George Rountree, L. M. Scott, McNeill & Bryan, and J. N. Wilborn, on the briefs), for respondents.

Before SIMONTON, Circuit Judge, and PAUL and BRAWLEY, District Judges.

PAUL, District Judge. This case is brought here on petition to superintend and revise certain orders of the district court for the Western district of North Carolina in the matter of D. W. C. Benbow, bankrupt. 96 Fed. 514. The questions of law to be considered by this court arise from the following facts, as they appear in the record:

On the 23d day of January, 1894, D. W. C. Benbow, the bankrupt, executed a deed of assignment to J. S. Cox, conveying to him, in trust for the benefit of said Benbow's creditors, all of his real and personal property. Very soon after the execution of the deed of assignment, a number of the creditors of said Benbow obtained judgments against him on their various claims, amounting in the aggregate to over $350,000. These judgments were docketed in the superior court of Guilford county, N. C., thus constituting liens on the real estate of said Benbow, the judgment debtor. In April, 1894, a number of the judgment creditors of said Benbow filed creditors' bills in the superior court of Guilford county, assailing the deed of assignment made to Cox as fraudulent and void, made for the purpose of obstructing, hindering, and delaying the creditors of said Benbow, asking that the same be declared void, and that they might secure a priority over other creditors having docketed judgment liens. At the May term of said court, 1894, on motion of the plaintiff in one of these causes, the court appointed W. H. Ragan receiver "of all the property and estate, including choses in action, of the judgment debtor, D. W. C. Benbow, whether subject or not to be sold under execution, except the homestead and personal property exemption, and that such receiver be invested with all the powers of receivers in cases of proceedings supplemental to execution." The order appointing the receiver enjoined the judgment debtor, D. W. C. Benbow, and other defendants therein named, from transferring or disposing of the property of the judgment debtor, including certain notes designated as the "Fisher" and "Ross" notes, theretofore assigned by said D. W. C. Benbow. At the June term, 1899, of the superior court of Guilford county, the issue in each of the causes made by the creditors' bills being the same, they were consolidated. The issue was submitted to a jury, which rendered a verdict in favor of the plaintiffs, and the court thereupon entered a decree declaring said deed null and void, and that the plaintiffs in the several suits have priority of lien on the property described in the deed of assignment over all other creditors. It decreed that the property be sold to satisfy the liens thereon, fixing the terms of sale, and appointing C. P. Frazier commissioner to make the sale. Said Frazier, as commissioner, advertised the sale of the real estate for August 7, 1899. The

bankrupt, D. W. C. Benbow, was adjudicated such on the 5th day of April, 1899, and received his discharge in bankruptcy on the 31st day of May, 1899. The Southern Loan & Trust Company was appointed trustee of the bankrupt's estate on the 20th day of April, 1899. On the 5th day of August, 1899, the said Southern Loan & Trust Company, trustee, filed a petition in the district court for the Western district of North Carolina, praying for an order directing the trustee to sell the real estate formerly belonging to the bankrupt, which had been decreed by the state court to be sold, and which had been advertised by the commissioner appointed by the state court to sell the same. Also for a restraining order enjoining Frazier, the commissioner of the state court, the bankrupt, and C. D. Benbow, who held by assignment several judgments against the bankrupt, the plaintiffs in the several bills in the state court under which the decree of sale had been entered, their agents and attorneys, from making the sale ordered by the state court, or from in any way interfering with or disposing of the property of the bankrupt. The petition alleged that the verdict of the jury in the state court finding that the deed of assignment from Benbow, the bankrupt, to Cox, January 23, 1894, was made for the purpose of hindering, delaying, and defrauding certain creditors of said Benbow, was allowed and procured by the absence of said Benbow as a witness, and by his connivance. That the bankrupt had previously procured the assignment to his son, Charles D. Benbow, the judgments of the plaintiffs in the several actions pending in the superior court of Guilford county to set aside the deed of assignment to Cox made January 23, 1894, and that thus the bankrupt had practically secured to himself the entire proceeds of the property decreed by the state court to be sold for the satisfaction of the judgments. The petition further avers that on the appointment of the trustee title to all the property of the bankrupt was by law vested in the trustee, and that no title could pass by the decree of the superior court of Guilford county, as the trustee in bankruptcy was not a party to the proceedings in the state court, and that the effects of the bankrupt should be administered by the bankrupt court. It further alleges that a sale under the decree of the state court "will result in a sacrifice of the property at small and inadequate prices, and will immediately endanger the creditors of said bankrupt not embraced in said several suits." That it would give the bankrupt and the assignee of the judgments a great and undue advantage over other creditors of said bankrupt, as a sale so effected might not be attacked or defeated successfully after a sale made, and the only recourse left to the creditors of the bankrupt would be a contest over the proceeds of the sale, which, under the privileges given by the order of the sale in the state court, would be nothing more than the costs of the sale should the assignee of the judgments, C. D. Benbow, become the purchaser.

Upon the filing of this petition, the district judge issued a restraining order as follows:

"It is, upon motion, ordered and adjudged that an order issue commanding C. P. Frazier, commissioner, Chas. D. Benbow, assignee, D. W. C. Benbow;

their agents and attorneys, to refrain from selling or offering to sell any of the estate or effects, real or personal, of the bankrupt, D. W. C. Benbow, under the decree of the superior court of Guilford county, made at June term, 1899, in the several suits mentioned in the petition and affidavit, as advertised by the said commissioners, until the further order of this court; and it is further ordered that the said C. P. Frazier, commissioner, Chas. D. Benbow, assignee, and D. W. C. Benbow, appear before me on the 22d day of August, 1899, at Hendersonville, and show cause, if any they have, why an injunction should not be granted."

To this rule, Frazier, the commissioner of the state court, filed his answer, briefly reciting his appointment as such commissioner by the state court; that he is advised that the district court will not enjoin him from performing his duty as directed by the state court; that, had he not been restrained from selling the property on the 7th of August, it would have brought a full, fair, and reasonable price; that the state court will fully protect the rights of all persons interested in the property. The bankrupt, D. W. C. Benbow, and C. D. Benbow, the assignee of the judgments in the state court, filed their separate answers under oath to the rule. They deny that the verdict of the jury in the state court, finding the deed of assignment from D. W. C. Benbow, January 23, 1894, to have been made with intent to hinder, delay, and defraud the creditors of said Benbow, and the decree entered in pursuance thereof, were procured by the consent and connivance of either of them. They deny that the judgments assigned to C. D. Benbow were purchased with the money of D. W. C. Benbow, the bankrupt, or were assigned for or are held for his benefit. They aver that, as the judgment liens in the state court existed years before there was a bankrupt act, and that, as the creditors' bills were filed four years before its passage, the court of bankruptcy cannot interfere by injunction with the p oceedings in the state court, and that its decree cannot be attacked in the bankrupt court. After the temporary restraining order had been granted by the district judge, the trustee, on the 17th and on the 19th of August, 1899, notified the bankrupt to deliver to it all of his deeds and other muniments of title to the lands directed to be sold by the decree of the state court, and certain shares of mining and railroad stocks, bonds, contracts, etc., and other personal property of the bankrupt. In compliance with these demands the bankrupt delivered the deeds and other muniments of title in his possession. As to the personal property, the bankrupt stated that it was under the control of the receiver appointed by the state court, and that he was restrained from transferring or interfering in any way with the same.

In the record is an uncompleted examination of the bankrupt before the referee, taken after the entry of the temporary restraining order. Its further taking was adjourned by consent until September 28, 1899, for cross-examination. On the 8th of September the district court entered the order brought here for review. Several ex parte affidavits were also filed as to the proceedings in the state court at the June term, 1899, when a decree for the sale of the property was entered, the purpose being to assail the bankrupt and his attorneys for the manner in which the defense was con-

ducted on the trial of the issue as to the validity of the deed of assignment from Benbow to Cox. The district court, on the 8th of September, 1899, heard the rule to show cause issued August 5, 1899, and entered the following order:

"It is therefore ordered that D. W. C. Benbow, the bankrupt, and all persons acting at his instance, at once comply with the written demands of the trustee, the Southern Loan & Trust Company, made on the 17th day of August, 1899, and on the 19th day of August, 1899. It is further ordered and adjudged that the said Southern Loan & Trust Company, trustee of the said D. W. C. Benbow, bankrupt, is hereby authorized and empowered to sell the property of the said bankrupt, D. W. C. Benbow, free from all incumbrances (first having set apart to him the exemptions allowed by law), for cash to the highest bidder, after having advertised the same in each county where said property may be located, in some newspaper published in the said county, for four successive weeks preceding said sale. It is further ordered and adjudged that the proceeds realized from said sale stand as a substitute for the lands and property sold, and be held by the trustee for the benefit of those holding bona fide claims and liens, to the extent of their interest therein, and as may hereafter be established." 96 Fed. 514.

## The petitioners make the following assignment of errors:

"(1) In that the order requires the bankrupt, D. W. C. Benbow, to comply with the written demands of the trustee, made on the 17th and on the 19th of August, 1899; and in that he had no notice of the application for such an order, and it was not included or covered in or by the rule to show cause, and the property demanded is properly the property of W. H. Ragan, receiver, appointed by the state court, and said Benbow is under order to in no wise interfere with or transfer same. (2) In that it authorizes and directs the trustee to sell the property of D. W. C. Benbow, bankrupt, the same being in custodia legis by reason of the appointment of a receiver thereof by the superior court of Guilford county more than four years before the bankrupt act was enacted by the congress, and by the further reason that judgment creditors had filed creditors' bills in 1894 and 1895 in the superior court of Guilford, a court of competent jurisdiction, to have the deed of assignment of D. W. C. Benbow declared void, and to appropriate, by sale, the property described therein, which actions have been successfully prosecuted, and a decree obtained granting the prayer of complainants, and directing the sale of said property by its commissioner duly appointed; the filing of said bills constituting an equitable lien and fi. fa. on said property. (3) In that the bankrupt court cannot, by a rule to show cause, try rights of property, nor restrain a plaintiff in a court of competent jurisdiction, who has obtained judgment more than four months before the bankrupt filed his petition in bankruptcy, from pursuing his remedy to enforce his lien in a court of competent jurisdiction. (4) In that the said court did not discharge the rule and authorize the trustee to intervene in said creditors' bills in the superior court of Guilford, if, in the opinion of the court, the protection of the interest of any creditor requires such intervention."

The assignment of errors presents but one important question to be determined in this case; that is, whether a bankrupt court can, through a trustee, in a bankrupt proceeding such as was had in the district court, devest a state court of the possession and control of property in its custody by regular judicial proceedings instituted more than four months before the adjudication in bankruptcy. That the state court had complete jurisdiction of the parties and of the subject-matter in the several suits instituted years before the judgment debtor became a bankrupt, is not questioned. That it had the authority to appoint a receiver to take charge of the property pending the litigation for the enforcement of the judgment or execution

liens of the creditors is not disputed. The rule of comity that ob-. tains between the federal and the state courts where the litigation involves the same subject-matter has been so frequently announced by the decisions of both that an extended citation of them is unnecessary. We will only refer to them so far as seems advisable for laying the foundation of our conclusion in the case under consideration. In Covell v. Heyman, 111 U. S. 182, 4 Sup. Ct. 358, 28 L. Ed. 392, the doctrine is thus clearly and forcibly declared, Justice Matthews delivering the opinion of the court:

"The forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity, with, perhaps, no higher sanction than the utility which comes with concord; but between state courts and those of the United States it is something more. It is a principle of right and of law, and, therefore, of necessity. It leaves nothing to discretion or mere convenience. These courts do not belong to the same system, so far as their jurisdiction is concurrent; and, although they co-exist in the same space, they are independent, and have no common superior. They exercise jurisdiction, it is true, within the same territory, but not in the same plane; and when one takes into its jurisdiction a specific thing, that res is as much withdrawn from the judicial power of the other as if it had been carried physically into a different territorial sovereignty. To attempt to seize it by foreign process is futile and void. The regulation of process and the decision of questions relating to it are part of the jurisdiction of the court from which it issues."

There have been numerous decisions of the supreme court involving the same question, but none has held differently from the rule stated in the case just cited. The principle is of ready application to the facts in the case before us. The chancery suits in the state court, instituted in 1894, were pending when D. W. C. Benbow was adjudged a bankrupt. A receiver had been appointed several years before by the state court to take charge of his real and personal property. No order had been entered discharging the receiver, and the record shows that he was performing his duties at the special May term, 1899, of the court. A decree was entered directing a sale of the property, and appointing a commissioner to sell the same. The property had been duly advertised for sale by the commissioner when the restraining order was applied for by the trustee in bankruptcy to prevent the sale of the property under the decree of the state court. A temporary restraining order was granted, forbidding the sale under the decree of the state court until the further order of the bankrupt court, and an order was entered to show cause why an injunction should not be granted. On the return of the order to show cause the bankrupt court entered a decree directing the bankrupt to comply with the demands of the trustee to deliver to it, the trustee, all of the property surrendered by the bankrupt or alleged to be in his possession. This included all of the real estate directed to be sold by the decree of the state court. The bankrupt court decreed the property to be sold by the trustee, and that the proceeds realized from the sale should stand as a substitute in the hands of the trustee for the land and property sold, subject to the future order of the bankrupt court. By this decree entered on an order to show cause why an injunction should not be awarded, the district

court assailed the jurisdiction of the state court, took from it the property in its possession and under its control, annulling its proceedings, revoking its decree of sale, and inhibiting its officer, the special commissioner, from executing its orders. This proceeding by the bankrupt court is directly in conflict with the ruling of the supreme court in Eyster v. Gaff, 91 U. S. 521, 23 L. Ed. 403. The doctrine stated in that decision so completely covers the case before us that we cannot more clearly express our view than to quote from it. The court says:

"It is a mistake to suppose that the bankrupt law avoids of its own force all judicial proceedings in the state or other courts the instant one of the parties is adjudged a bankrupt. There is nothing in the act which sanctions such a proposition. The court, in the case before us, had acquired jurisdiction of the parties and of the subject-matter of the suit. It was competent to administer full justice, and was proceeding according to the law which governed such a suit, to do so. It could not take judicial notice of the proceedings in bankruptcy in another court, however seriously they might have affected the rights of parties to the suit already pending. It was the duty of that court to proceed to a decree as between the parties before it, until by some proper pleadings in the case it was informed of the changed relations of any of those parties to the subject-matter of the suit. Having such jurisdiction, and performing its duty as the case stood in that court, we are at a loss to see how its decree can be treated as void. It is almost certain that if, at any stage of the proceedings, before sale or final confirmation, the assignee had intervened, he would have been heard to assert any right he had, or set up any defense to the suit."

The judge of the district court, while recognizing the doctrine as just quoted, seeks to draw a distinction between that case and the one at bar. He says:

"It will be observed, in Eyster v. Gaff, and in all other cases above cited, that the property of the bankrupt was in the actual possession of the state courts or adverse claimants. Where the property in question is not covered by litigation, or is not in possession of the state courts, the jurisdiction of the bankrupt courts will not be ousted. It is the interference with the possession of another court that would ensue if jurisdiction was taken that prevents it from attaching."

The district court seems to have been of the opinion, and it is the contention of counsel for the respondent in this court, that the receiver must be in the actual possession of the property in order to place it in the custody of the court. This position is erroneous. "A court of equity, by its order appointing a receiver, takes the subject-matter of the litigation out of the control of the parties and into its own hands, and ultimately disposes of all questions, legal or equitable, growing out of the proceeding." High, Rec. § 4. As stated by the supreme court of appeals of Virginia in Beverley v. Brooke, 4 Grat. 187, "A decree appointing receivers levies upon the property an equitable execution." "The possession of the receiver is that of the court, of which he is the ministerial officer. Thus it is that, inasmuch as the receiver is merely an officer of the court appointing him, property in his possession is said to be in the custody of the law. * * * And it is said to be immaterial in this respect that the receiver appointed declines to act, the property being, notwithstanding, in the custody of the law." Beach, Rec. § 221. Nor is it necessary for a court of equity to take possession of the property in

litigation, or to attempt to do so by the appointment of a receiver, where the object of the suit is to set aside a fraudulent conveyance, and enforce judgment liens against the land of the debtor. If proceedings have been commenced more than four months before the adjudication in bankruptcy, jurisdiction of the state court cannot be devested by the bankrupt court. This was the case in Kimberling v. Hartly (C. C.) 1 Fed. 571, and the court held:

"Where an action is pending in a state court of competent jurisdiction to enforce a specific lien on property of the debtor, the subsequent bankruptcy of the debtor does not devest the state court of its jurisdiction to proceed to a final decree in the cause, and execute the same. The assignee in bankruptcy may intervene in such action, but the jurisdiction of the state court and the validity of its decree is not affected by his failure to do so."

The class of decisions relied on by counsel for the respondents to sustain the proposition that a court of bankruptcy can enjoin proceedings in a state court in a case such as we have here does not support that contention. On examination it will be found that they do not go to the extent of holding that a bankrupt court can enjoin proceedings in a state court where the jurisdiction of the latter had been invoked more than four months before the adjudication in bankruptcy. Reference to a few of them will show this. In re Smith (D. C.) 92 Fed. 135, was a case where the bankrupt executed a deed of general assignment under the statute law of Indiana within four months before he was adjudicated a bankrupt. The court held:

"Where an insolvent debtor makes an assignment for creditors in pursuance of the terms of a state statute, the operation of which is suspended by the national bankruptcy law, and is afterwards adjudged a bankrupt, the court of bankruptcy has power, on a summary petition, to order the assignee to surrender the property in his possession to a receiver appointed by a court of bankruptcy."

Carter v. Hobbs (D. C.) 92 Fed. 594, is another case relied on by counsel for respondent. In this case, the bankrupt, within four months before adjudication in bankruptcy, had executed a mortgage. The trustee filed a petition in the bankrupt court alleging that the mortgage was executed with the fraudulent intent of giving one creditor a preference over his other creditors and to hinder, delay, and defraud them. The court held that the mortgage cred tor, though he had not proved his claim, was a party to the proceedings in bankruptcy, and that the trustee seeking to set aside the mortgage might proceed by petition in the bankruptcy court, and need not resort to the state or federal circuit court.

In Re Brooks (D. C.) 91 Fed. 508, the trustee in bankruptcy filed a petition in the bankrupt court for an order directing the restoration to him of property of the bankrupt, unlawfully sold on foreclosure of a chattel mortgage after the adjudication in bankruptcy, and before the appointment of a trustee. The court held that it had jurisdiction of such a petition. The sale had been made by a constable under the statute laws of Vermont, and this was relied on as a defense to the petition. The court said:

"The petitioner sets up proceedings under the laws of the state for foreclosure of his mortgage in justification. These are not judicial proceedings in any court drawing to it jurisdiction of the subject-matter, but are merely pro-

ceedings for a public sale by an officer, in a specified way, as agent for the mortgagee."

In re Christy, 3 How. 292, 11 L. Ed. 603, Norton v. Boyd, 3 How. 426, 11 L. Ed. 664, and Houston v. City Bank of New Orleans, 6 How. 504, 12 L. Ed. 526, are also cited in support of the action of the district court. These cases all arose under the bankrupt act of 1841, which conferred more extensive powers on the bankrupt court than does the act of 1898. Yet these decisions do not go to the extent of taking from the possession of a state court property which has been in its custody for years before the adjudication in bankruptcy, and of enjoining its officer in the execution of its decree for a sale of the property under its control.

One further question requires examination. It is insisted in the petition of the trustee filed in the court below that the decree of the state court, the execution of which was enjoined, was procured by fraud and collusion; that Charles D. Benbow was not the bona fide holder of the judgments assigned to him by certain judgment creditors of the bankrupt, but that he held the same for the benefit of the bankrupt himself. The proceedings in the state court, the record shows, were regular in every respect. If the assignment of the judgments in the state court were not for the benefit of Charles D. Benbow, but he in reality held them in trust for the benefit of the bankrupt, because the judgments had been paid for by the bankrupt, the trustee could have set this matter up in the state court. The bankrupt act provides that he may, by order of the bankrupt court, enter his appearance, and defend any pending suit against the bankrupt. As said by the supreme court in Eyster v. Gaff, supra:

"If there was any reason for interposing, the assignee could have had himself substituted for the bankrupt, or made a defendant on petition."

The importance of this case will justify us in making a further quotation from the same decision. It is as applicable to the present as to the former bankrupt act:

"In the absence of any appearance by the assignee, the validity of the decree can only be impeached on the principle that the adjudication of bankruptcy devested the other court of all jurisdiction whatever in the foreclosure suit. The opinion seems to have been quite prevalent in many quarters at one time that the moment a man is declared bankrupt, the district court which has so adjudged draws to itself by that act not only all control of the bankrupt's property and credits, but that no one can litigate with the assignee contested rights in any court except in so far as the circuit courts have concurrent jurisdiction, and that other courts can proceed no further in suits of which they had at that time full cognizance; and it was a prevalent practice to bring any person who contested with the assignee any matter growing out of disputed rights of property or of contracts into the bankrupt court by the service of a rule to show cause, and to dispose of their rights in a summary way. This court has steadily set its face against this view."

For the reasons stated, we hold that, the state court having acquired jurisdiction of the subject-matter and taken possession of the property more than four months before the adjudication in bankruptcy, it must be allowed to remain in control of the same, and to dispose of it under its own decrees. The order awarded by the district court restraining the commissioner of the state court from executing the decree of sale entered by that court must be dissolved.

The order directing a sale of said property by the trustee of Benbow, the bankrupt, must be revoked, and the petition of the trustee dismissed, without prejudice to his right to proceed in the state court as he may be advised.