## In re SHOEMAKER.

(District Court, W. D. Virginia.   January 3, 1902.)

BANKRUPTCY—ENJOINING SALE UNDER EXECUTION—PRIOR JURISDICTION OF STATE COURT.

Where a state court has acquired jurisdiction over property of a debtor by the levy thereon of an execution issued on its judgment prior to the filing of a petition in voluntary bankruptcy by the judgment defendant, the court of bankruptcy will not interfere by injunction to restrain the sale of such property under the execution on petition of the bankrupt; but he will be remitted to the state court, which, by reason of its priority of jurisdiction, is entitled to determine the effect of the bankruptcy proceedings on the further execution of its process.[1]

In Bankruptcy.   On motion of William Deering & Co. to dissolve restraining order.

D. O. Dechert and C. A. Hammer, for creditor.
John E. Roller, for bankrupt.

McDOWELL, District Judge.   In 1892 Deering & Co. obtained a judgment for $225.57, interest and costs, against Chas. S. Shoemaker in the circuit court for Rockingham county, Va.   On June 28, 1901, execution on this judgment was issued, and on the same day it was delivered to, and its receipt indorsed thereon by, the sheriff of said county.   This execution, as is admitted, was levied on certain wheat, then lately severed, on July 15, 1901, and a sale advertised for November 13, 1901.   On June 28, 1901, the wheat had not been severed.   On October 28, 1901, Chas. S. Shoemaker filed a voluntary petition in bankruptcy, and on November 12, 1901, he was adjudged a bankrupt.   On November 12, 1901, the bankrupt filed his petition in this cause, praying that the sheriff and the creditors, Deering & Co., be restrained from selling the wheat until the further order of this court.   On the same day, ex parte, the order as prayed for was granted by the then acting judge of this court.   Deering & Co. have moved the court to dissolve this injunction.

In the view that I take of this case, many of the points raised by counsel need not be considered.   By the levy of the execution on July 15, 1901, the circuit court of Rockingham county acquired jurisdiction of the subject-matter of this controversy; and the subsequent filing of the petition and adjudication in bankruptcy should not, as it seems to me, oust that court of its jurisdiction.   In re Seebold

---

[1] Federal courts enjoining proceedings in state courts, see notes to Garner v. Bank, 16 C. C. A. 90; Trust Co. v. Grantham, 27 C. C. A. 575.

(Fifth circuit) 45 C. C. A. 117, 105 Fed. 910, cannot be discriminated from the case at bar. In that case the landlords of Mrs. Seebold obtained on March 13, 1900, in the state court, a judgment against her for rents. On the same day execution was issued. Prior to March 31, 1900, the sheriff levied the execution, inter alia, on certain personal property of the tenant then on the premises, and advertised the property to be sold on April 2, 1900. On March 31, 1900, Mrs. Seebold presented her voluntary petition to be adjudged a bankrupt, and on the same day she was so adjudged, and on her petition the sheriff was restrained by order of the bankrupt court from delivering the proceeds of the proposed sale to the landlords. On further hearing the district court dissolved this order, and on petition for revision the circuit court of appeals affirmed the decision of the lower court; Judge McCormick saying for the court:

"The subject of the controversy was money in the hands of an officer of the state court, the proceeds of the sale of property made under a judgment and decree of the state court fixing the amount due by the defendant in the suit in that court, and decreeing the statutory privilege and right of pledge granted and fixed by the state law in favor of the plaintiffs in that suit. The suit was begun and proceeded to judgment, and there was a seizure thereunder of the property, subject to the privilege and right of pledge, and the same was advertised for sale, all before the beginning of the bankruptcy proceedings in this case. The bankruptcy proceedings were not involuntary. The state court had the amplest possession of the subject of the controversy, and full jurisdiction of the parties, at the date of the institution of the bankruptcy proceedings. There is no provision in the present bankrupt law which authorizes or permits the courts of bankruptcy, by the use of either summary or plenary process, to stop the proceedings of the state court in a suit in which it had already, before the institution of the proceedings in bankruptcy, obtained possession of the subject-matter and jurisdiction of the parties. What effect the provisions of the bankrupt act may have to stay proceedings in a state court is a question of which that court has full jurisdiction to decide, subject to prescribed methods of review, and which the courts of bankruptcy may not attempt to limit or control without a manifest disregard of that comity which is an essential element of our public law, and under which our state and national systems of judiciary work in admirable harmony. Certainly with, and probably without, an order of the court of bankruptcy, the trustee in this case could have made his application to the state court in the suit therein pending, setting up his claim, or the claim of the estate he represents, to the proceeds in question. Or, in answer to the rule taken in that court by the sheriff, the trustee could have fully presented the claims and had the rights of the bankrupt estate in the proceeds adjudged in that suit."

Pickens v. Dent (Fourth circuit) 45 C. C. A. 522, 106 Fed. 653, was a case of a voluntary petition in bankruptcy, and a subsequent bill in chancery filed in the bankrupt court by the bankrupt, in which he prayed that a sale about to be made of real estate by the receiver, appointed by the state court, be enjoined. The proceeding in the state court, being with the object of setting aside alleged fraudulent conveyances by the bankrupt, and subjecting the real estate so conveyed to the claims of his creditors, had been instituted some years prior to the filing of the petition in bankruptcy, and was still in progress. That case, also, cannot be distinguished from the case at bar, if it be considered that in the case at bar the levy of the execution is but a continuation of the proceeding in which Deering & Co. obtained judgment against Shoemaker in 1892. The judgment

itself constituted no lien, but the execution could only have issued by reason of a previous judgment. The lien of the execution, in the language of subsection "c" of section 67 of the bankruptcy act, was "obtained pursuant to an action at law begun" much more than four months prior to the filing of the petition in bankruptcy.

In the case of Frazier v. Trust Co. (Fourth circuit) 40 C. C. A. 76, 99 Fed. 707, which is strikingly like Pickens v. Dent, supra, some stress seems to be laid on the fact that the state court had acquired jurisdiction more than four months prior to the filing of the petition in bankruptcy. But, with deference, it seems to me that, at least in such cases as this, the time when the state court acquires jurisdiction is immaterial, provided it is prior to the filing of the petition in bankruptcy in the federal court.

In the case at bar it is contended that the lien of Deering & Co. was acquired within four months of the date of the filing of the voluntary petition by Shoemaker; that subsection "f" of section 67 of the act applies to cases of voluntary bankruptcy (In re McCartney [D. C.] 109 Fed. 621); and that consequently the lien claimed by the creditors is avoided, and the property levied on becomes a part of the bankrupt estate. No opinion is expressed on these points. If these contentions be sound, they will be upheld on proper proceedings in the state court. That court, and not this, is, it seems to me, the one that should decide these questions.

The case of Bear v. Chase (Fourth circuit) 40 C. C. A. 182, 99 Fed. 920, has been considered, but does not seem to me to be applicable to the case at bar, even if many of the expressions therein are not overruled by Pickens v. Dent, supra, and Bardes v. Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175. In Bear v. Chase the bankruptcy was involuntary. The attaching creditors were parties to the bankruptcy proceeding. And the modified order of the district court, which was asked to be reviewed, left to the state court the determination of the questions in dispute.

Solely on the ground that the state court had acquired jurisdiction of the subject-matter of this controversy prior to the institution of the bankruptcy proceedings, comity requires that this court should decline to enjoin the officer of that court. See Taylor v. Carryl, 20 How. 583, 15 L. Ed. 1028; Covell v. Heyman, 111 U. S. 182, 4 Sup. Ct. 355, 28 L. Ed. 392; 1 Fost. Fed. Prac. (3d Ed.) § 9.

The cases of Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814; Bardes v. Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175; Mitchell v. McClure, 178 U. S. 539, 20 Sup. Ct. 1000, 44 L. Ed. 1182; and Hicks v. Knost, 178 U. S. 541, 20 Sup. Ct. 1006, 44 L. Ed. 1183,—have been considered. The case at bar is unlike Bryan v. Bernheimer, and in the case at bar there is no apparent "absolute necessity" (clause 3, § 2, Bankruptcy Act) for requiring an officer of this court to take charge of the property now in the custody of the sheriff of Rockingham county.

Under these circumstances, it seems clear that this court would not have jurisdiction to settle the controversy as to the validity of the lien of Deering & Co. on proceedings by the trustee of the bankrupt estate, and I do not perceive any reason why this court is not

equally 'deprived of jurisdiction, although it is the bankrupt himself who asks the action of this court. Deering & Co. are not parties to the bankruptcy proceeding. They are third parties claiming property adversely. The opinion in Bryan v. Bernheimer, supra, might possibly be construed as obiter, inasmuch as it appears that Bernheimer consented to the jurisdiction of the district court. But in no event does that opinion overrule the opinions in Bardes v. Bank, supra, and the other cases above mentioned in 178 U. S., 20 Sup. Ct., and 44 L. Ed., except in cases where there is a necessity for requiring a receiver or the marshal to take charge of property, to prevent loss to the estate, under clause 3 of section 2 of the act.

Let an order go down dissolving the restraining order of November 12, 1901, and dismissing the petition of that date. Being of opinion that this court is without jurisdiction, no order is made as to costs. Bank v. Cannon, 164 U. S. 322, 17 Sup. Ct. 89, 41 L. Ed. 453.