## In re KNIGHT.

(District Court, W. D. Kentucky. September 15, 1903.)

### No. 830.

1. BANKRUPTCY—JURISDICTION OF COURTS OF BANKRUPTCY.
    When a general assignment for the benefit of creditors is made by a debtor, the same being an act of bankruptcy, the right immediately arises in his creditors to have his estate administered under the bankruptcy law; and, where the enforcement of this right is demanded by a proper proceeding within four months after its inception, no action by any court

in any suit brought after the commission of the act of bankruptcy can defeat it, without the consent of the bankruptcy court, whose jurisdiction is exclusive, and, on the making of the adjudication, relates back to the act of bankruptcy.

2. SAME—PRIORITY OF JURISDICTION OF STATE COURT—APPOINTMENT OF RECEIVER.

Under Bankr. Act July 1, 1898, c. 541, § 3a, subd. 4, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422], as amended by Act Feb. 5, 1903, c. 487, 32 Stat. 797, which makes the appointment of a receiver because of insolvency an act of bankruptcy, a state court cannot, by the appointment of a receiver on such ground, obtain priority of jurisdiction to administer the property of a debtor, to the exclusion of a court of bankruptcy.

3. SAME—PROCEEDING BY TRUSTEE TO RECOVER PROPERTY.

Under Bankr. Act July 1, 1898, c. 541, § 67e, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449], as amended by Act Feb. 5, 1903, c. 487, 32 Stat. 800, a court of bankruptcy has jurisdiction of a proceeding by a trustee to recover property from an assignee to whom it was conveyed by the bankrupt, for the benefit of creditors, within four months prior to the bankruptcy.

4. SAME—PRIORITY OF JURISDICTION OF STATE COURT—SUIT COMMENCED WITHIN FOUR MONTHS.

In general, an adjudication of bankruptcy vests the bankruptcy court with exclusive jurisdiction to administer the property of the bankrupt, as against any state court which may have obtained possession of such property through proceedings instituted within four months prior to the adjudication, and it is immaterial that the proceedings in the state court were for the enforcement of valid liens not affected by the bankruptcy act.

5. SAME—SALE OF PROPERTY BY ASSIGNMENT.

A sale of property by an assignee for the benefit of creditors vests the purchaser with no title as against the trustee in bankruptcy of the assignor subsequently appointed on an adjudication based on the assignment, where such purchaser has made no payment for the property.

In Bankruptcy. On rule to require the surrender of property to the trustee.

Wheeler & Hughes and W. M. Smith, for petitioning creditors and trustee.

Robbins & Thomas and Thos. W. Bullitt, for R. M. Chowning, receiver.

EVANS, District Judge. Upon hearing the testimony and considering the record so far as applicable to the pending rule, the court finds the facts to be as follows: On March 21, 1903, Henry Knight, of Fulton, Ky., owning property probably worth $45,000, made a general assignment for the benefit of his creditors to R. M. Chowning, who then was and now is the cashier of the First National Bank of Fulton. That on the same day, in writing at the foot of the deed of assignment, Chowning accepted the trust, though he did not qualify as assignee in the county court of Fulton county, as required by section 76 of the Kentucky Statutes of 1899, until March 26, 1903, when, at an early hour in the morning, with W. W. Morris, then vice president of said bank, and J. E. Robbins and Gus Thomas, its attorneys, as sureties thereon, he did so by executing the bond required by law. That the assignee was thenceforward subject to the orders of the county court under section 82 of the Kentucky Statutes of 1899. That while, under section 96, this would not prevent an action for a

settlement of the trust, yet otherwise the trust was to be executed and the assets administered pursuant to the provisions of what constitutes a portion of the insolvency laws of the state, embraced in chapter 7 of the Kentucky Statutes of 1899, and covering sections 74 to 96, inclusive, though it is not understood that this qualification of the assignee would prevent the appointment of a receiver in the bank's action, if otherwise admissible. That on the same day, to wit, on March 26, 1903, the First National Bank of Fulton, by its attorneys, J. E. Robbins and Gus Thomas, brought a suit in equity in the Fulton circuit court against Henry Knight and others upon certain promissory notes for large sums, and which had more than four months before March 21, 1903, been secured by a mortgage upon certain real estate—principally a large hotel belonging to the bankrupt—the relief sought being a personal judgment upon the indebtedness, and a foreclosure of the mortgage given to secure its payment. That certain other persons, who also had liens upon the same property, mostly if not altogether prior to that of the bank, were made defendants to the action, and required to set up their claims. That subsequently they did this by cross-petitions filed in the action. That on May 14, 1903, upon the claim in the petition and otherwise that Knight was insolvent (which fact at the hearing of the rule was admitted to have been true at the time), and upon the further claim that the mortgaged property was probably insufficient to pay the mortgage debts, the Fulton circuit court, in the action referred to, appointed the same R. M. Chowning as its receiver therein, with directions to take possession of the mortgaged premises, rent the same, etc., and to do certain other things in the way of operating the hotel, which constituted the major part of the mortgaged premises. That said Chowning at once gave bond as receiver, and entered upon the discharge of his duties as such. That no suit was ever brought in the circuit court for a settlement of the assignee's trust, under section 96 of the statutes, nor did the county court make any orders in the premises under section 82, nor was any order taken in either court concerning the duties of the assignee in the premises. That on June 9, 1903, Chowning sold certain personal property of the bankrupt, to wit, a building on leased premises, used as a restaurant, and certain appurtenances thereto, to one J. A. Milner. That the consideration therefor was the full amount of the debt due by Knight to Chowning, and which Milner assumed and agreed to pay, but no part of which has yet been paid. That Chowning claimed to have a mortgage on this last-named property for a debt due to himself for $2,700, and made the sale as assignee without orders from any court. That before this sale, namely, on June 1, 1903, three or more creditors of Knight, whose claims aggregated $500 in amount, filed a petition in this court, wherein they showed that on May 21, 1903, Knight had made a general assignment for the benefit of his creditors, and upon that ground prayed that he might be adjudged a bankrupt, within the meaning of the law. That pending that proceeding, and when it was about ready for determination, the said Knight, on June 22, 1903, filed his own voluntary petition in this court, praying for the same relief. That the two proceedings were consolidated by the orders of this court, and on June 23,

1903, the said Knight was accordingly adjudged a bankrupt. That on the 8th day of August, 1903, H. F. Oliver was duly appointed trustee of the bankrupt, and shortly thereafter entered upon the discharge of his duties as such, and that on September 5th he filed herein his affidavit, wherein he stated, in substance, that the said Chowning had possession of the property of the bankrupt, and refused, upon demand, to surrender it to the trustee, and prayed for a rule against said Chowning to show cause why he should not be required to surrender the assets of the bankrupt to the trustee. The court further finds as a fact established by the testimony that the mortgaged property exceeds in value the amount of the liens upon it, including the several mortgages and the vendor's lien. Another point was raised, and upon it the court, under the rule established in Mueller v. Nugent, 184 U. S. 15, 22 Sup. Ct. 269, 46 L. Ed. 405, heard evidence, to wit, the question whether the receiver's possession of the property, under the facts found, was adverse to the trustee. The court concluded that such possession of the receiver was not adverse, but, as that may be a question involving considerations both of law and of fact, it may be better disposed of by what may be hereafter said. At the close of the testimony the court, without disposing of the questions arising upon the rule, was clearly of opinion that there ought to be at least a temporary stay of proceedings in the case pending in the state court; and under section 11 of the bankruptcy law (Act July 1, 1898, c. 541, 30 Stat. 549 [U. S. Comp. St. 1901, p. 3426]), and upon the admission in open court that, at the time of the appointment of the receiver, Henry Knight was insolvent, an order was entered accordingly.

In the response of Chowning, and by the argument of counsel, four contentions are made. The first is that the property of the bankrupt having been taken into the custody of the state court, through its receivership, before the adjudication in bankruptcy, and in an action of which the state court had jurisdiction, the case is one to be decided upon the well-known principle that that one of two courts of co-ordinate jurisdiction which first gets its grasp upon property is entitled to hold it for subjection to its judgment; and the case of Peck v. Jenness, 7 How. 612, 12 L. Ed. 841, is principally relied upon to support this contention. The second contention is that the respondent, as receiver, holds the assets adversely to the trustee in bankruptcy, and that a summary proceeding for its recovery is not admissible. The third is that the mortgage and vendor's liens sought to be enforced in the state court were all created more than four months before the making of the general assignment, and this circumstance is supposed, per se, to be sufficient to defeat the jurisdiction of this court, although the suit for the enforcement of those liens was commenced after the commission of the act of bankruptcy, and within four months before the adjudication. And the fourth contention is that Chowning having sold the restaurant before the adjudication to Milner, to whom possession was delivered, that portion of the estate is also held adversely to the trustee. We need not discuss these propositions separately, though it may be admitted that, if the bankruptcy court has only co-ordinate jurisdiction with the courts of the state in bankruptcy matters, the rule should be discharged. Knott v. Evening

Post Co., 124 Fed. 342. On the contrary, a different result must follow if the bankruptcy court, within the powers bestowed upon it for bankruptcy purposes, is one of exclusive jurisdiction. Doubtless, that court, while it may, under section 11 of the statute, stay proceedings in actions in a state court in certain cases, can decline to exercise its jurisdiction and power in that respect. But this depends entirely upon its own discretion—a discretion which cannot be controlled otherwise than by appellate proceedings in a higher court. This discretion has been exercised by this court in several instances —among them, in the Case of Holloway, 93 Fed. 639, and in the Case of Porter, 109 Fed. 111. Doing this did not depend upon any want of power in such cases, but because it was discreet not to exercise the power, inasmuch as no benefit could come to the general creditors by staying a suit in the state court, the entire avails of which must go to the plaintiff in the action there pending. Here, however, the evidence shows that the property exceeds in value the amount of the liens upon it; and the court's discretion will move in the other direction, if, indeed, it be a matter of discretion at all. It must be a matter of discretion if the law gives the bankruptcy court superior or exclusive power in such cases, but the application of the trustee must be denied if the rights of the state court in the premises are superior to those of this court. We must endeavor, therefore, to ascertain what the law is.

By the decisions in Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814, Leidigh Carriage Co. v. Stengel, 95 Fed. 645, 37 C. C. A. 210, and other cases, it is the established doctrine in bankruptcy that an assignee, under a deed of general assignment, and the execution of which deed is the act of bankruptcy upon which the adjudication is made, although he has qualified in the county court and is acting under its orders, does not hold the estate of the bankrupt adversely to the trustee in bankruptcy. It thence logically and necessarily follows that the assignee holds the property subject to the right of the requisite number of creditors having debts amounting in the aggregate to the sum of $500 to avail themselves of the act of bankruptcy and secure an adjudication, and that when this is done the rights of the creditors relate back to the act of bankruptcy, and override all intermediate or intervening attempts by the assignee to overreach or defeat the results of the act of bankruptcy, or the rights of creditors arising out of it. The general principle which underlies the subject, and which cannot be ignored, must be this: When a general assignment for the benefit of creditors is made by a debtor, eo instanti there is generated by the statute a right in his creditors to have his affairs wound up and his estate administered in the bankruptcy court pursuant to the bankrupt law, which has suspended the operation of all state insolvency laws; and, if the enforcement of this right is demanded by a proper proceeding within four months after its inception, no action in any court in any suit brought after the commission of the act of bankruptcy can defeat it without the consent of the bankrupt court. Quoad hoc, the jurisdiction of the bankruptcy court is necessarily exclusive and supreme. In re Watts & Sachs, 190 U. S. 1, 23 Sup. Ct. 718, 47 L. Ed. ——; Mueller v. Nugent, 184 U. S. 1, 22 Sup.

Ct. 269, 46 L. Ed. 405; Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814; In re Lengert Wagon Co. (D. C.) 110 Fed. 927; Leidigh Carriage Co. v. Stengel, 95 Fed. 645, 37 C. C. A. 210. In other words, the rights of creditors, inchoate from the making of the assignment, ripen into maturity when the adjudication is made. If it were otherwise the bankruptcy law could be evaded with the utmost facility. When Henry Knight, in this instance, committed an act of bankruptcy by making the deed of general assignment to Chowning, the First National Bank of Fulton, of which Chowning was cashier, and of the litigation of which he was an active manager, must be regarded as having had full notice of the act of bankruptcy, and of the consequences likely to follow, especially as the vice president of the bank and its attorneys were the sureties of Chowning on his bond as assignee, executed early in the morning of the same day on which the bank's suit was brought. With this knowledge, and under these circumstances—or, indeed, under any circumstances—can the rights of the creditors to have the bankrupt's estate administered in the bankruptcy court and under the bankruptcy law be defeated by the expedient of thereafter hurriedly bringing a suit in the state court, in which, upon an allegation of insolvency, a receiver is appointed and put in charge of the debtor's property—things which, of themselves, under the amendment of 1903 (Act Feb. 5, 1903, c. 487, 32 Stat. 797), constitute a further act of bankruptcy, upon which alone an adjudication could have been secured? And just at this point we may well inquire whether, if an adjudication in bankruptcy had been made upon a creditor's petition alleging, in the language of the amendment of February 5, 1903, that because of insolvency a receiver had been put in charge of Knight's property by the state court, that court, under the doctrine and rule of comity, and the supposed teachings of the case of Peck v. Jenness, would be still entitled to administer the assets, notwithstanding the bankruptcy law? This inquiry would seem to reach the kernel of the matter, for if a state court could thus do the very thing which constitutes an act of bankruptcy, and at the same time defeat it on the doctrine of comity and priority of jurisdiction, the new ground of bankruptcy is a manifest delusion. These suggestions seem to me to show that the expedient resorted to in this case, under the facts and circumstances surrounding it, cannot defeat the rights of the general creditors, which related back to the doing of the thing upon which the adjudication in bankruptcy was made. Section 70 of the bankrupt law (30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]), it is true, provides that the title of the trustee shall relate back to the adjudication, but it is obvious that cases like Bryan v. Bernheimer and Leidigh Carriage Co. v. Stengel proceed upon the view that that provision in no way affects the point decided. Besides, it is important to remember that, whether so in fact or not, a deed of general assignment is constructively fraudulent, and, in legal contemplation, its purpose is to hinder and delay creditors, within the meaning of section 67e of the statute of 1898 (30 Stat. 564 [U. S. Comp. St. 1901, p. 3449]), and consequently that under that section the assigned property, if the deed was made within four months before the filing of the petition in bankruptcy, belongs to the trustee, and by

the express terms of the section it is made his duty to recover and reclaim it. Brandenburg on Bankruptcy, §§ 1100, 1097, and cases cited. This duty and this right, we hold, cannot be defeated by any proceeding brought within the four months in any other court. And such recovery may be enforced by proceedings in the bankruptcy court, under the express provisions of section 67, cl. "e," as amended by Act Feb. 5, 1903, c. 487, 32 Stat. 800, wholly independently of section 23 of the act of July 1, 1898, c. 541, 30 Stat. 552 [U. S. Comp. St. 1901, p. 3431], which is thereby limited to suits in controversies of a different nature.

It seems to me to admit of no doubt, under the provisions of section 3, cl. "b," 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422], that the period of four months is clearly and definitely fixed in the present bankruptcy law (though possibly not so in the act in force when Peck v. Jenness was tried) as limiting the time within which creditors shall have an opportunity to obtain knowledge of the commission of acts of bankruptcy, and to consider and determine whether to avail themselves of the rights afforded by the bankruptcy law for their benefit, as the consequence of those acts of their debtor. The rights of the general creditors should not be easily defeated by the acts of secured creditors whose debts are much more certain of payment. The acts of others within the four-months period referred to cannot defeat the rights given to the general creditors by the law. If an act of bankruptcy is made the basis of an adjudication, such adjudication, when made, dissolves and avoids every intermediate step respecting the bankrupt's estate taken anywhere outside of the bankruptcy court, subject, possibly, to certain equitable considerations, such as may arise out of innocent acts, but the existence and effect of which considerations must be adjudged by the bankruptcy court alone. Examples of the considerations referred to are those which relate to expenses incurred, the fees, etc., of assignees, and the doing of certain innocent things after the act of bankruptcy, but before the adjudication. So, again, it seems to me to admit of no doubt that the receiver of the state court, in this instance, having been appointed after the, commission of the act of bankruptcy upon which the adjudication was made, and long within the period of four months referred to, is precisely in the position of the assignee in Bryan v. Bernheimer, and holds subject to the rights of the general creditors, which relate back to the deed of assignment, and for whose use and benefit the assignee held the assets, precisely as a receiver would have done in case a debtor's property had been put in his charge because of the insolvency of the debtor under the amendment of 1903, if that act of bankruptcy had been the basis of the adjudication. There can be no difference in principle between the two cases, and when they are coupled their force is irresistible. And if this result does not follow, then the commission of the act of bankruptcy would defeat the object of the law in making it such, which it would be absurd to suppose was intended by Congress. Ex necessitate rei this must be so, for, if the property in the hands of the receiver or assignee must still remain there, the adjudication in either case would be a mere barren abstraction, and utterly useless to the petitioning creditors. These observations may be emphasized in this case by the

facts, first, that the receiver does not claim to hold otherwise than in a representative or official capacity for the benefit of the secured creditors, and makes no pretense of personal and individual ownership of the property (Mueller v. Nugent, 184 U. S. 16–17, 22 Sup. Ct. 269, 46 L. Ed. 405); second, that his appointment, and the delivery of the possession of the property to him as receiver, were by a process and upon grounds which per se constituted an act of bankruptcy; third, that his constituents at the time had full notice of the original act of bankruptcy, to wit, the general assignment to Chowning, the present receiver, upon which act the adjudication in bankruptcy was made; and, fourth, because, holding the property as assignee, and under liabilities fixed by the decision in Bryan v. Bernheimer, Chowning could not change or evade those liabilities by silently abdicating his trust as assignee, and assuming those of a receivership which he had promoted, and in a suit to which the general creditors were not parties, and the judgment in which was not binding upon them. In other words, when the assignment was made, and when Chowning qualified as assignee, at that moment, under the ruling in Bryan v. Bernheimer, he came under a certain obligation to the creditors, namely, the obligation to hold the assets for the trustee if the bankruptcy law should be invoked by a proper proceeding; and that obligation, once arising, cannot be destroyed by the action of the state court, taken most probably at his instance in a proceeding commenced after the obligation arose, and to which the petitioning creditors were not parties.

These propositions take the case entirely out of the doctrine of Peck v. Jenness, and of judicial comity generally, and bring it within those cases which show that upon transactions which are acts of bankruptcy, and which may be made the basis of adjudications as such in the bankruptcy courts, the latter courts have the exclusive power, under the supreme law of the land, and that as to acts done within four months of the commencement of bankruptcy proceedings there are no courts with powers co-ordinate with the bankruptcy courts. In re Watts & Sachs. If these were not sustainable propositions, the bankruptcy law would be a vain thing. If, by going into a state court after one act of bankruptcy had been committed, and committing another act of bankruptcy there, by putting the property of an insolvent person into the hands of a receiver, the rights of creditors under the general bankruptcy law could be defeated, proceedings under that law would be made ridiculous. Such results cannot be possible, especially since the amendment of 1903. If, within four months after its commission, creditors avail themselves of the provisions of the law respecting an act of bankruptcy, the bankruptcy proceeding must draw to itself the whole power, and override everything done in the meantime, though as to things done in other courts in actions brought more than four months before the act of bankruptcy was committed the doctrine of comity, and of cases like Peck v. Jenness, and Metcalf v. Barker, 187 U. S. 165, 23 Sup. Ct. 67, 47 L. Ed. 122, will apply. In short, under the statute, as construed by the courts, the line of demarcation is plain, and the established rule is this: Whenever, in a suit in a state court, the property of a debtor has come into the custody

of that court, its right to control and administer it for the purposes of that suit is superior to that of the bankruptcy court, provided such suit was commenced and the seizure made before the beginning of the four-months period referred to; but, if the suit was begun and the seizure made within that period, the right of the bankruptcy court over the property is not only superior, but after the adjudication is exclusive, regardless of what has been done in the state court, whose jurisdiction in such cases is divested by the bankruptcy proceedings. By this rule we must test the case now before us, and the result is obvious.

My attention has not been called to any decision of the Supreme Court nor of any Circuit Court of Appeals in any case precisely like the one before me. In Metcalf v. Barker and in Pickens v. Roy, 187 U. S. 177, 23 Sup. Ct. 78, 47 L. Ed. 128, and in Frazier v. Southern Loan & Trust Co., 99 Fed. 707, 40 C. C. A. 76, and in many other cases, the suits in the state courts had been instituted more than four months before the commission of the acts of bankruptcy, and consequently the state courts were not deprived of jurisdiction over the property. But it will be observed that in all of them the courts are careful to put their decisions upon that very ground. In Pickens v. Roy, 187 U. S. 180, 23 Sup. Ct. 79, 47 L. Ed. 128, the court, in referring to the rules governing cases of priority of jurisdiction, imputes to Judge Goff the following language, which is approved:

"The bankruptcy act of 1898 does not in the least modify this rule, but with unusual carefulness guards it in all of its details, provided the suit pending in the state court was instituted more than four months before the District Court of the United States had adjudicated the bankruptcy of the party entitled to or interested in the subject-matter of such controversy."

Though there is error in the citation, as Judge Goff did not sit in Frazier v. Southern Loan & Trust Co., 99 Fed. 707, 40 C. C. A. 76, the language is found in Pickens v. Dent, 106 Fed. 657, 45 C. C. A. 522, the decision in which was under review in Pickens v. Roy, and there affirmed. The Frazier Case, however, does very strongly state the rule that the bankrupt court can only maintain its jurisdiction where the suit in the state court was brought within four months before the adjudication, and because the suit there was brought in the state court more than four months before the adjudication the application of the trustee to have the property delivered to him by the state court receiver was denied. I have preferred to use the words "commission of the act of bankruptcy," rather than the word "adjudication," as being more accurate, inasmuch as from many causes, especially where there are vigorous contests, the adjudication may be delayed; and it seems to me that the entire reason of the thing points to the date of the commission of the act of bankruptcy as the starting point for estimating the four months, except in cases where the plain language of the statute otherwise requires. But whether one or the other is most accurate is not material in this case. The essential matter is that the authorities, though in cases the converse of the one before us, plainly establish the proposition that this court's jurisdiction over the bankrupt's assets is exclusive, except as to such portions thereof as may have been seized in some suit in a state court more

than four months before the adjudication in bankruptcy. This rule can in no way injure or impair the rights of secured creditors, whose liens are fully preserved by section 67, cl. "d," and will be perfectly protected in the bankruptcy proceedings. In plain terms, that clause provides that such "liens" as those appear to be which are asserted in the cause pending in the Fulton circuit court "shall not be affected by this act." It will be observed that it is the "lien" which shall not be affected, and not the suit brought for its enforcement. By other provisions—especially section 67, cls. "e," "f," 30 Stat. 564, 565 [U. S. Comp. St. 1901, pp. 3449, 3450]—certain clearly designated liens created within four months are made null and void; and it is to those liens and not to such as are preserved by clause "d" of the section, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449], that the four-months period applies. As it is not now a question of "liens," but only a question as to what court shall enforce one which is assumed to be valid, it seems manifest that the provisions referred to in no way support the contention of counsel that, in all cases where a lien is created more than four months before the commission of the act of bankruptcy, that mere fact entitles the state courts in all such cases to enforce it, regardless of whether the bankruptcy proceedings were instituted before or after the suit was brought in the state court, and whether or not the latter suit was begun within the four months next preceding the bankruptcy.

It seems to the court to admit of no doubt, under many provisions, and particularly section 3, cl. "b," of the bankruptcy law, when construed with reference to its principal object, to wit, the marshaling and distributing of a debtor's assets among his creditors upon just and uniform principles, that it was the intention of Congress to bring the whole matter, including both secured and unsecured claims, into the bankruptcy court, except in cases where the suit in the state court was brought more than four months before the commission of the act of bankruptcy. In cases of the class just mentioned, as we have seen, the jurisdiction of the bankruptcy court must yield to that of the state court, upon the principle stated in Peck v. Jenness, while, on the other hand, if the four-months period had not elapsed when the suit was brought, the state court should yield jurisdiction to the bankruptcy court. In re Watts & Sachs. Congress, which has, under the Constitution, full power, has decided to fix this as the limitation. Being the supreme law, it is equally binding upon all courts, state and national. So we see that the question does not affect the lien, which is fully preserved, and which, if valid, may be the basis of proof of a secured debt, and promptly enforced in the bankruptcy proceeding, to which all creditors are parties, but does affect the question of which tribunal shall enforce the lien under the circumstance. And indeed, subject to the limitation referred to, it is most important that this should be the rule, if a uniform system of bankruptcy is desirable at all, for otherwise much discord might ensue, and greatly contribute to defeat the purposes of the bankruptcy statute, which, we repeat, is to have all the debtor's affairs, as far as practicable, adjusted and settled in one harmonious proceeding, wherein the rights of all claimants can be viewed comprehensively by one court.

Jaquith v. Rowley, 188 U. S. 620, 23 Sup. Ct. 369, 47 L. Ed. 620, has been cited by counsel for the respondent. There, much more than four months before the act of bankruptcy was committed, the debtor had been required to give and did give bail in two civil suits pending in a Massachusetts state court. In order to induce one Silsby to become his surety, the debtor at the time placed in his possession $421 in money for his indemnity. Afterwards the debtor was adjudicated a bankrupt, and the trustee instituted in the federal court a proceeding to recover the money. But the court held, under section 23 of the bankruptcy law, as construed in Bardes v. Hawarden Bank, 178 U. S., 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175, that the federal court had no jurisdiction, because Silsby, who had the money in his possession as indemnity against his liability as surety, was an adverse claimant thereof,—a proposition not affecting the question now before me. While it is not necessary to express any decided opinion upon the question, it may well be doubted whether a mortgagee of real estate in Kentucky is, as between himself and the trustee in bankruptcy, an adverse holder of the property. He does not have possession, and can hardly be said to hold it at all. He is, at last, only a creditor—a person to whom a debt is due—though one who has a better position than have those creditors whose debts are not secured. But this advantage does not arise out of possession given simultaneously as a security against a liability which otherwise would not have been incurred, as in the Jaquith Case; but is a mere equity, which can only be made effective by a judicial proceeding.

Touching the sale to Milner, it need only be remarked that it obviously comes within the ruling in Bryan v. Bernheimer, and the proposition is, if possible, emphasized by the facts not only that Milner appears not to have paid any part of the consideration, but also that Chowning, who made the sale, was not only assignee and vendor but also creditor. Indeed, the multitude of parts played by Chowning cannot escape attention.

We have, upon a careful consideration of the whole case, concluded that none of the contentions of the respondents can be maintained, and, although we hold that the receiver's refusal to surrender the assets to the trustee does not create an adverse claim, in the legal sense, yet in what has been said I have carefully abstained from any expression of opinion as to the right of the trustee to enforce his claims by a summary proceeding. It is hoped that, whether such right exists or not, it will not be necessary to exercise it. It seems so clear, from the bankruptcy law, as construed by the highest courts, that the rights of the receiver, acquired under the circumstances shown by the testimony, are subordinate to those of the trustee and to those of the bankruptcy court, that it is not doubted that the Fulton circuit court will acquiesce in that view, and, upon proper application made to it, will order the receiver to turn over to the trustee the property in his hands. To the end that an application for that purpose may be made, further proceedings upon the rule will for the present be held in abeyance. It would not only be unseemly, but altogether disagreeable to this court, to pursue any course which would be wanting in the utmost respect and courtesy to the state tribunal, and orders will be

made directing the trustee to apply to that court for leave to enter a special appearance in the case there pending, styled "First National Bank of Fulton v. Henry Knight and others," for the purpose of filing a copy of this opinion, the orders made in pursuance thereof, a copy of the adjudication in bankruptcy, and an accompanying application for an order of that court directing its receiver to turn over to the trustee in bankruptcy the property of the bankrupt held by the receiver. For the purpose of giving ample opportunity for doing this, the rule will be respited until the 12th day of October, 1903, at which time the trustee will report what has been done in the premises.

NOTE. The state court took the same view of the law, and on October 1st ordered its receiver to turn over to the trustee in bankruptcy all the property in his hands.