## BRYAN v. BERNHEIMER.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 58.  Submitted October 31, 1900.—Decided April 15, 1901.

A bankrupt, nine days before the filing of a petition in bankruptcy against him, made a general assignment for the benefit of his creditors which was an act of bankruptcy. After the filing of the petition in bankruptcy, the assignee sold the property. After the adjudication in bankruptcy, and before the appointment of a trustee, the petitioning creditors applied to the District Court for an order to the marshal to take possession of the property, alleging that this was necessary for the interest of the bankrupt's creditors. The court ordered that the marshal take possession, and that notice be given to the purchaser to appear in ten days and propound his claim to the property, or, failing to do so, be decreed to have no right in it. The purchaser came in, and propounded a claim, stating that he bought the property for cash in good faith of the assignee, submitted his claim to the court, asked for such orders as might be necessary for his protection, and prayed that the creditors be remitted to their claim against the assignee for the price, or the price be ordered to be paid by the assignee into court and paid over to the purchaser, who thereupon offered to rescind the purchase and waive all further claim to the property. *Held*, that the purchaser had no title in the property superior to the bankrupt's estate, and that the equities between him and the creditors should be determined by the District Court, bringing in the assignee if necessary.

THIS was a summary petition to the District Court of the United States for the Middle District of Alabama, sitting in bankruptcy, for an order to Bryan, the marshal of the District, to take immediate possession of property of David Abraham, a bankrupt, in the hands of Louis Bernheimer. The material facts, as appearing by the record, were as follows:

On October 29, 1898, Abraham made a general assignment of all his property, consisting of his stock of goods and book accounts, in a storehouse numbered 106 Dexter Avenue in Montgomery, Alabama, for the equal benefit of all his creditors, to one H. C. Davidson, who had the assignment recorded, and caused to be filed an inventory, and an appraisement of the

property at the sum of $7900, in a court of Alabama, according to the laws of the State, (Civil Code of Alabama of 1896, c. 113,) and forthwith took possession of the property.

On November 7, 1898, certain creditors of Abraham filed in the District Court of the United States, sitting in bankruptcy, a petition alleging that said assignment was an act of bankruptcy, and praying that he might be adjudged a bankrupt.

On December 12, 1898, Abraham, after due notice to him, was adjudged a bankrupt. On the same day, the petitioning creditors presented to the District Court a petition, alleging the assignment to Davidson, and the adjudication in bankruptcy, and that upon the filing of the petition for that adjudication the court obtained jurisdiction over Abraham's estate, and it was the duty of Davidson, as his assignee, to hold all his property subject to the orders of the court; but that Davidson, disregarding the authority and jurisdiction of the court, had sold and disposed of the property at much less than the aforesaid appraisement, and the purchasers had been in possession of the property for several days, selling and disposing thereof at retail and at bankrupt prices; and that, unless the court made an order requiring the property to be taken immediate possession of, the petitioners and all other creditors of Abraham would be greatly damaged, and their dividends out of the estate greatly lessened; and praying for an order to the marshal of the District to take possession of, and to hold until further order of the court, all the property owned by Abraham at the time of his assignment to Davidson, wherever the same might be found, and all property sold by Davidson to Louis Bernheimer or to any one else, and being in the storehouse numbered 106 Dexter Avenue in Montgomery, and to hold it until the further order of the court. On the filing of this petition, the District Court made the order therein prayed for, reciting " it further appearing from said petition that it is necessary to the interest of the creditors of the said Abraham that this court take possession of all the property and effects of said Abraham." And on the same day the marshal, pursuant to that order, seized the stock of goods in Bernheimer's possession.

On December 13, 1898, the District Court, on a petition of

the marshal for instructions concerning the goods seized by him, ordered that notice be given to Bernheimer to appear in ten days, and to propound any claim that he had to the goods so seized, or, on failing to do so, be decreed to have no claim or right to them; and directed the marshal to retain possession of the goods until the further order of the court.

On December 17, 1898, the petitioning creditors presented another petition to the District Court, further alleging that on or about November 17, 1898, after the filing of the petition in bankruptcy against Abraham, and in disregard of the proceedings thereon pending, Davidson turned over and delivered to Bernheimer the whole stock of goods, then worth about $10,000, and Bernheimer, with knowledge of the pending proceedings in bankruptcy, took possession of the goods, sold large quantities thereof, and received large sums of money therefor, before the rest was taken by order of the court into the hands of the marshal; and praying for an order that Bernheimer file with the referee in bankruptcy an account of the moneys so received by him.

On December 22, 1898, Bernheimer, in obedience to the order of December 13, came into the District Court, and propounded a claim to the stock of goods. The claim stated the assignment to Davidson, and the petition for an adjudication of bankruptcy, and that the petitioning creditors afterwards filed a petition in the court of bankruptcy, praying that Davidson be required to appear and show cause why he should not be restrained from selling the goods so assigned to him; that, in obedience to a rule issued on that petition, Davidson appeared and showed cause satisfactory to the court; and that the court, on the ground that the petition was not sworn to, nor any bond given, discharged the rule against him, declined to grant the restraining order, and dismissed the petition without prejudice. The claim further stated that Davidson thereupon proceeded to sell the goods by public auction, and the claimant, acting in good faith and under the advice of counsel, bought the goods from Davidson at the sale by public auction for the sum of $3500, which was a fair and reasonable price, and paid the price, in cash to Davidson, and took and kept possession of the goods

until deprived thereof by the marshal; that the claimant never intended to interfere in any way with the process of the court, or with any property of the bankrupt; that if he was deprived of these goods, and Davidson was allowed to keep the money paid him by the claimant as their price, the claimant's position would be one of great hardship and loss; that Davidson, under the terms of the assignment to him, would be compelled to pay that money to Abraham's creditors, and the goods purchased in good faith by the claimant would also be held and sold again for the benefit of those creditors. Bernheimer's claim concluded as follows: "Claimant respectfully submits to the court his claim in this behalf. He asks the court's protection in the premises, and that it will issue such rules and orders in the premises as may be necessary to such protection. He further asks that the creditors of said bankrupt estate be remitted to the fund derived by said Davidson from claim for the purchase price of said goods. Claimant prays also that, in default of such order, or if he is mistaken in the relief prayed for, your honorable court will issue a rule that the said Davidson be ordered to pay into this court the full amount derived by him from claimant, as purchase money of said goods, and that same be paid over to claimant, who thereupon offers to rescind said purchase and to waive all further claim to said goods."

On December 24, Bernheimer, in answer to the petition of December 17, filed an account as therein requested, showing that he had received, from sales of the goods, sums amounting to $2768.40; that at the time of his purchase from Davidson he also bought the exemptions allowed to the bankrupt under the laws of Alabama and the Bankrupt Act of 1898, amounting to the sum of $1,000; and that, deducting that sum and necessary expenses, he had a net balance in his hands of $1434.80.

On the same 24th of December, the petitioning creditors demurred to the claim of Bernheimer, because it showed no title in Bernheimer good as against their rights; because the alleged sale by Davidson to Bernheimer was made with knowledge by both of the filing of the petition in bankruptcy, and after the court of bankruptcy had acquired jurisdiction of the property; because the deed of assignment to Davidson was an act of bank-

ruptcy, void as against the petitioning creditors; and because Bernheimer asked the court to settle and decide questions between him and Davidson which it had no jurisdiction to try and determine.

On the same day, the District Court sustained the demurrer; and, Bernheimer declining to plead further, adjudged and decreed "that the said Louis Bernheimer acquired no title to the said goods, or to the proceeds of the sales thereof made by him, under the purchase of said goods from H. C. Davidson as assignee of said bankrupt; superior to the title of said bankrupt estate;" and that Bernheimer pay over to the marshal, to await the further order of the court, all the proceeds, to be ascertained by a referee in bankruptcy, of the sales made by him of those goods.

Bernheimer appealed to the Circuit Court of Appeals, which, considering the case as if before it on a petition for revision of the decree of the District Court, reversed that decree; and ordered the cause to be remanded to that court, with instructions to dismiss the petition against Bernheimer, to vacate all orders made thereon, and to restore to him the goods taken from his possession; and further ordered that all costs, counsel fees, expenses and damages, occasioned to him by the marshal's seizure and detention of the property, be fixed and allowed by the court of bankruptcy, and paid by the petitioning creditors. 93 Fed. Rep. 767; 35 C. C. A. 592.

The marshal, in behalf of the petitioning creditors, thereupon obtained a writ of certiorari from this court.    175 U. S. 724.

*Mr. John D. Rouse, Mr. Gustave F. Mertins* and *Mr. William Grant* for petitioner.

*Mr. Robert E. Steiner, Mr. Thomas H. Clark* and *Mr. Gordon McDonald*, opposing.

MR. JUSTICE GRAY, after stating the case as above, delivered the opinion of the court.

The general assignment, made by Abraham to Davidson, did not constitute Davidson an assignee for value, but simply made

him an agent of Abraham for the distribution of the proceeds
of the property among Abraham's creditors. This general as-
signment was of itself an act of bankruptcy, without regard to
the question whether Abraham was insolvent. Bankrupt Act
of July 1, 1898, c. 541, § 3; *West Co.* v. *Lea*, 174 U. S. 590.

Nine days after this assignment, certain creditors of Abraham
filed a petition in the District Court of the United States to
have him adjudged a bankrupt, alleging this assignment as an
act of bankruptcy. After the filing of that petition, Davidson
sold the property to Bernheimer, and the District Court, after
the adjudication of bankruptcy, and on petition of the same
creditors, alleging that, unless the court made an order requir-
ing the property to be taken immediate possession of, the peti-
tioners and all other creditors of Abraham would be greatly
damaged, and their dividends out of the estate greatly lessened,
and praying for an order to the marshal to take possession of
the property, ordered the marshal to do so; and on his petition
for instructions as to the property so seized, ordered notice to
Bernheimer to appear in ten days, and to propound any claim
that he had to the property, or, on failing to do so, be decreed
to have no right to it. In obedience to that order, Bernheimer
came into court, and propounded a claim to the property under
the sale by Davidson to him, alleging that if he was deprived
of it, and Davidson was allowed also to keep the price paid, his
position would be one of great hardship; submitting his claim
to the court, and asking it to make such orders as might be
necessary for his protection; and praying that the creditors be
remitted to their claim against Davidson for such price, or, if
the claimant was mistaken in the relief he prayed for, for an
order that such price be paid by Davidson into court and paid
over to the claimant, who thereupon offered to rescind the pur-
chase and to waive all further claim to the property.

The District Court sustained a demurrer of the petitioning
creditors to this claim, and decreed that Bernheimer had no
title superior to the title of the bankrupt estate. On his appeal
from that decree, the Circuit Court of Appeals reversed it, and
ordered the property to be restored to him, with costs, counsel
fees, expenses and damages, occasioned to him by the seizure.

The marshal, in behalf of the petitioning creditors, thereupon obtained this writ of certiorari.

The case, as the opinion of the Circuit Court of Appeals states, presents this question: "Did the District Court, as a court of bankruptcy, have jurisdiction to try the title to the goods involved in this controversy by summary proceedings, seizing the goods, and requiring Louis Bernheimer, the purchaser at the assignee's sale, by a rule entered against him, to appear before that court within ten days and propound any claim he had to the goods, or any part thereof; or, failing therein, that he be decreed to have no claim or right thereto?"

The Bankrupt Act of 1898, § 2, invests the courts of bankruptcy "with such jurisdiction, at law and in equity, as to enable them to exercise original jurisdiction in bankruptcy proceedings, in vacation in chambers, and during their respective terms;" to make adjudications of bankruptcy; and, among other things "(3) appoint receivers or the marshals, upon application of the parties in interest, in case the courts shall find it absolutely necessary for the preservation of estates to take charge of the property of bankrupts after the filing of the petition and until it is dismissed or the trustee is qualified;" "(6) bring in and substitute additional persons or parties in proceedings in bankruptcy when necessary for the complete determination of a matter in controversy; (7) cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, except as herein otherwise provided." The exception refers to the provisions of section 23, by virtue of which, as adjudged at the last term of this court, the District Court can, by the proposed defendant's consent, but not otherwise, entertain jurisdiction over suits brought by trustees in bankruptcy against third persons to recover property fraudulently conveyed by the bankrupt to them before the institution of proceedings in bankruptcy. *Bardes* v. *Hawarden Bank*, 178 U. S. 524; *Mitchell* v. *McClure*, 178 U. S. 539; *Hicks* v. *Knost*, 178 U. S. 541.

The present case involves no question of jurisdiction over a suit by a trustee against a person claiming an adverse interest in himself.

Nor is it a petition under § 3*e* or § 69 of the Bankrupt Act of 1898, each of which relates to applications to take charge of and hold property of a bankrupt after the petition and before the adjudication in bankruptcy. The provisions of those sections, requiring the applicants to give bond for damages, have no application to a case where there has been an adjudication of bankruptcy, and the property thereby brought within the jurisdiction of the court of bankruptcy.

But it is a petition filed after an adjudication of bankruptcy and before the appointment of a trustee; and must rest on the authority given to the court of bankruptcy, by clause 3 of section 2, to " appoint receivers or the marshals, upon application of parties in interest, in case the courts will find it absolutely necessary for the preservation of estates, to take charge of the property of bankrupts after the filing of the petition and until it is dismissed or the trustee is qualified." Does this include property of the bankrupt in the hands of third persons?

The Bankrupt Act of March 2, 1867, c. 176, § 40, provided that upon the filing of a petition for an adjudication of involuntary bankruptcy, if probable cause should appear for believing that the debtor was about to remove or conceal, or to make any fraudulent conveyance of his property, the court might issue a warrant to the marshal commanding him " forthwith take possession provisionally of all the property and effects of the debtor, and safely keep the same until the further order of the court." 14 Stat. 536; Rev. Stat. § 5024. It was held by the Court of Appeals of New York that this did not authorize the marshal to take possession of the goods of the bankrupt in possession of third persons claiming title thereto. *Doyle* v. *Sharpe*, 74 N. Y. 154. But that decision was overruled by this court, and Mr. Justice Miller in delivering its opinion said :

" The act of Congress was designed to secure the possession of the property of the bankrupt, so that it might be administered under the proceedings in the bankrupt court. Between the first steps initiating proceedings in the bankrupt court and the appointment of the assignee, a considerable time often passes. During that time, the property of the bankrupt, especially in a case commenced by creditors, may be surreptitiously conveyed

beyond the reach of the court or of the assignee, to whose possession it should come when appointed. If the bankrupt does not voluntarily aid the court, or is inclined to defeat the proceedings, he can, with the aid of friends or irresponsible persons, sell his movable property and put the money in his pocket, or secret his goods or remove them beyond the reach of his assignee or the process of the court, and defy the law. The evidence in this case shows the manner in which this can be done. It was the purpose of the act of Congress to prevent this evil. It therefore provides that, as soon as the petition in bankruptcy is filed, the court may issue to the marshal a provisional warrant directing him to take possession of the property and effects of the bankrupt and hold them subject to the further order of the court. To have limited this right or duty of seizure to such property as he might find in the actual possession of the bankrupt would have manifestly defeated in many instances the purposes of the writ. There is therefore no such limitation expressed or implied. As in the writ of attachment, or the ordinary execution on a judgment for the recovery of money, the officer is authorized to seize the property of the defendant, wherever found; so here it is made his duty to take into his possession the property of the bankrupt wherever he may find it. It is made his duty to collect and hold possession until the assignee is appointed or the property is released by some order of the court, and he would ill perform that duty if he should accept the statement of every man in whose custody he found the property which he believed would belong to the assignee, when appointed, as a sufficient reason for failing to take possession of it." *Sharpe* v. *Doyle*, 102 U. S. 686, 689, 690. A like decision was made in *Feibelman* v. *Packard*, 109 U. S. 421.

These considerations are equally applicable to an application, after the adjudication in bankruptcy and before the qualification of a trustee, for an appointment of the marshal, under clause 3 of section 2 of the Bankrupt Act of 1898, to take charge of "the property" of the bankrupt "after the filing of the petition and until it is dismissed or the trustee qualified." It is true that under this provision the appointment is only to be made "in case the courts shall find it absolutely necessary for

the preservation of the estates." But that condition of things is shown, in the present case, by the allegation of the application, and the finding of the court of bankruptcy, that it was necessary to the interest of the creditors of the bankrupt to take immediate possession of his property.

In the opinion in *Bardes* v. *Hawarden Bank*, 178 U. S. 524, 538, it was indeed said: "The powers conferred on the courts of bankruptcy by clause 3 of section 2, and by section 69, after the filing of a petition in bankruptcy, and in case it is necessary for the preservation of property of the bankrupt, to authorize receivers or the marshals to take charge of it until a trustee is appointed, can hardly be considered as authorizing the forcible seizure of such property in the possession of an adverse claimant, and have no bearing upon the question in what courts the trustee may sue him." But the remark, "can hardly be considered as authorizing the forcible seizure of such property in the possession of an adverse claimant," was an inadvertence, and upon a question not arising in the case then before the court, which related exclusively to jurisdiction of a suit by the trustee after his appointment.

Moreover, the consent of the proposed defendant, Bernheimer, to this mode of proceeding is shown by the terms of his claim, in which, not protesting against the jurisdiction of the court of bankruptcy, he expressly submitted his claim to that court, and asked for such orders as might be necessary for his protection.

Considering that the property was not held by Davidson under any claim of right in himself, but under a general assignment which was itself an act of bankruptcy; that no trustee had been appointed; that the sale by Davidson to Bernheimer was made after and with knowledge of the petition in bankruptcy; and that Bernheimer consented to the form of proceeding; we are of opinion that Bernheimer had no title superior to the title of the bankrupt's estate; that the District Court, as a court of bankruptcy, was authorized so to decide in this proceeding; and that the decree of the Circuit Court of Appeals, directing the goods to be restored to Bernheimer, must be reversed.

The question remains what further order should be made. It is manifestly inequitable that Bernheimer should lose both the goods themselves and the price which he had paid to Davidson for them. His equities in that respect, and the rightful claim of the bankrupt's creditors against him, may depend upon many circumstances, and can be best settled in the District Court, which has authority, under clause 6 of section 2 of the Bankrupt Act of 1898, to bring in Davidson if necessary for the complete determination of the matter.

*Judgment of the Circuit Court of Appeals reversed, and case remanded to District Court for further proceedings in conformity with this opinion.*