## JOHNSTON v. SPENCER.

### (Circuit Court of Appeals, Eighth Circuit. March 13, 1912.)

### No. 3,597.

1. BANKRUPTCY (§ 293*)—SUMMARY PROCEEDINGS—JURISDICTION OF DISTRICT COURT.

The exception in Bankruptcy Act, § 2, as enacted in 1898 (Act July 1, 1898, c. 541, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3420]), investing courts of bankruptcy with jurisdiction to cause estates of bankrupts to be collected and distributed, and determine controversies in relation thereto except as otherwise provided, refers to the provisions of section 23, cls. "a," "b," whereby the District Court is authorized by a proposed defendant's consent to entertain jurisdiction over claims made by trustees against strangers to the proceedings in bankruptcy to assert title to money or property in their possession, and the possession of property by the bankrupt at the time of the institution of the proceedings in bankruptcy is a necessary condition to jurisdiction in the District Court to determine the rights of third persons to it except when such jurisdiction is invoked

---

by their consent, but the possession may be in the bankrupt himself or by some one for him as agent or bailee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 411, 417; Dec. Dig. § 293.*

Jurisdiction of federal courts in suits relating to bankruptcy, see note to Bailey v. Mosher, 11 C. C. A. 313.]

2. BANKRUPTCY (§ 288*)—SUMMARY PROCEEDINGS—JURISDICTION OF DISTRICT COURT.

Where a stockholder sold his stock to another stockholder for a sum in cash and an automobile of the corporation, and the corporation delivered a bill of sale of its stock in trade to a third person who executed notes payable to the corporation, and the notes were indorsed and discounted at a bank and the proceeds used to pay for the stock, the trustee in bankruptcy of the corporation could not, by summary proceedings in a court of bankruptcy, without the consent of the stockholder, litigate the rights of the stockholder to the money received, but the rights would only be adjudicated by a suit in a court of competent jurisdiction.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 447; Dec. Dig. § 288.*]

3. BANKRUPTCY (§ 288*)—SUMMARY PROCEEDINGS—JURISDICTION OF DISTRICT COURT.

Where one claiming money demanded by a trustee in bankruptcy asserted a right thereto in good faith, as distinguished from a mere colorable claim, the District Court could not proceed in a summary way to determine the rights of the parties, though the claim was fraudulent and voidable, but the trustee must be remitted to an independent suit in a court of competent jurisdiction.

[Ed. Note.—For other cases, see Bankruptcy. Cent. Dig. § 447; Dec. Dig. § 288.*]

Appeal from the District Court of the United States for the District of Colorado.

Summary proceedings by F. J. Spencer, trustee in bankruptcy of the Johnston Motor Sales Company, a bankrupt, against William M. Johnston. From an order requiring defendant to turn over to the trustee a specified sum, he appeals. Reversed and remanded.

Julius C. Gunter and Henry E. Lutz, for appellant.

Edward C. Stimson (Page M. Brereton, on the brief), for appellee.

Before VAN DEVANTER, Circuit Justice, ADAMS, Circuit Judge, and RINER, District Judge.

ADAMS, Circuit Judge. This was an appeal from an order made in a summary proceeding by a court of bankruptcy, requiring Johnston, the appellant, to turn over to the trustee of the estate of Johnston Motor Sales Company, the bankrupt, the sum of $6,350. The jurisdiction of the court to proceed in this summary way was challenged at the outset and at every subsequent stage of the case by the appellant, and this must necessarily receive first consideration on this appeal.

The evidence tends to show these facts: Johnston, prior to April 25, 1910, had been the president and treasurer of the Sales Company, owner of two-thirds of its capital stock, and the manager of its business. He desired to sell his interest, and Paul S. Tobin, the

owner of the balance of the stock and vice president of the company, desired to purchase it. On April 25th the assets of the company were estimated to be of the value of $13,000, and its liabilities amounted to $3,500. Johnston agreed to sell his interest represented by 10,000 shares of the capital stock, each share being of the par value of $1. to Tobin for $6,500 and a certain automobile belonging to the Sales Company known as the American Roadster. $5.000 was to be paid in cash, and the balance in three promissory notes each for $500 secured by stock to be purchased, as collateral. Tobin had difficulty in raising the money to make the cash payment, and the following proceedings were taken: A meeting of the directors of the company was held. All the directors, who constituted also all the stockholders, Johnston, Tobin, and one Lutz (who held one share of stock to qualify him to serve as director), were present. Johnston resigned as a director and also as president and treasurer of the company. Tobin resigned as vice president and was elected president and treasurer in place of Johnston. Lutz remained secretary as before, and Mrs. Tobin, wife of Paul S.. was elected vice president. The Sales Company then acting by Tobin as its president signed and delivered a bill of sale of practically all its stock in trade, consisting of automobiles, to one J. Clifford Leavitt, who in consideration thereof executed his two promissory notes, one for $4,500 and the other for $1,252, payable to the order of the Sales Company, and secured their payment by a chattel mortgage executed by him on the automobiles acquired by him. These notes were indorsed in the name of the Sales Company by Tobin, its president, discounted at the Central National Bank of Denver, and their proceeds, amounting to $5,500, were deposited by Tobin to the credit of his individual account in that bank. Upon this being done. the check for $5,000 before then given by Tobin to Johnston for his stock, was honored by the bank upon which it had been drawn, and the amount thereof charged against Tobin's personal account.

In this way the bank acquired legal title to the stock in trade of the Sales Company, and Tobin, the then owner of all the capital stock of the company, secured the money from the bank to make the cash payment to Johnston, and the Roadster of the value of about $2,000 came into the hands of Johnston.

The argument of counsel on this state of facts runs like this: The trustee, without challenging the sale of the stock in trade to the bank, claims that the money realized from that sale stands in place of the merchandise itself and is a trust fund for the benefit of creditors; that the directors' meeeing which authorized the described transaction was unauthorized and unlawful and the proceedings invalid; that Johnston, although he retired after. his resignation was tendered, well knew the subsequent proceedings whereby the assets of the Sales Company were employed to raise the money 'which Tobin paid him.

Johnston, on the other hand, claims: That he knew nothing of the proceedings of the directors' meeting after he withdrew as president and treasurer. and did not know that the money which was paid over by Tobin to him came from the proceeds of the notes and

mortgage given by the Sales Company; that the Sales Company was solvent and well able to pay all of its then existing debts without the use of the property appropriated to pay Johnston; and that Tobin, being then the owner of all the capital stock of the company, might properly do as was in effect done, reduce his capital by the declaration of a dividend equal to the amount of money and property taken out by him; that in any event he, owning all the capital stock of the company, could, inasmuch as the rights of no creditors were involved, take, with the co-operation of the other directors, the action which was taken.

But there are some other important considerations. On August 10, 1910, 3½ months after the events of April 25th, a petition was filed by the then creditors of the Sales Company to secure its adjudication as a bankrupt. On October 13, 1910, adjudication followed. On December 13, 1910, this summary proceeding was begun against Johnston. On the return day of the order to show cause, December 17th, Johnston appeared with counsel and objected to the jurisdiction of the court in bankruptcy over the case. There was no evidence, except a possible presumption of continuance arising from the fact that he had it eight months before, that Johnston had the money in his possession or under his control, on December 17, 1910, when the peremptory order was made requiring him to turn it over to the trustee.

[1] There is no pretense that the money had ever been taken into possession by the trustee as assets of the bankrupt estate or was in any sense in custodia legis, when the order was made.

An attempted analysis of the several cases (Bardes v. Hawarden, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175; White v. Schloerb, 178 U. S. 542, 20 Sup. Ct. 1007, 44 L. Ed. 1183; Hicks v. Knost, 178 U. S. 541, 20 Sup. Ct. 1006, 44 L. Ed. 1183; Mitchell v. McClure, 178 U. S. 539, 20 Sup. Ct. 1000, 44 L. Ed. 1182; Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814; Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405; Jaquith v. Rowley, 188 U. S. 620, 23 Sup. Ct. 369, 47 L. Ed. 620) in which the question of the jurisdiction of the District Courts as courts of bankruptcy to adjudicate, either by original suits or in summary proceedings, the rights of different claimants to property, would be idle. The Supreme Court has in a more recent case (Whitney v. Wenman, 198 U. S. 539, 552, 25 Sup. Ct. 778, 49 L. Ed. 1157) made final pronouncement upon several questions which seem to be decisive of this case. In that case the court, after reviewing the several cases just referred to, speaking by Mr. Justice Day, said:

"We think the result of these cases is, in view of the broad powers conferred in section 2 of the bankrupt act authorizing the bankruptcy court to cause the estate of the bankrupt to be collected, reduced to money and distributed, and to determine controversies in relation thereto, and bring in and substitute additional parties when necessary for the complete determination of a matter in controversy, that when *the property has become subject to the jurisdiction of the bankruptcy court as that of the bankrupt, whether held by him or for him,* jurisdiction exists to determine controversies in relation to the disposition of the same and the extent and character of liens thereon or rights therein."

This court, in Re Schermerhorn, 145 Fed. 341, 76 C. C. A. 215, citing and following Whitney v. Wenman, said:

"Upon the filing of a petition in bankruptcy, followed by an adjudication, all property *in the possession of the bankrupt of which he claims the owner-ship*, passes at once into the custody of the court of bankruptcy, and becomes subject to its jurisdiction to determine, by plenary action or summary proceeding, as the nature of the case demands, all adverse or conflicting claims thereto, whether of title or of lien. * * *"

Section 2 of the Bankruptcy Act as enacted in 1898 invests courts of bankruptcy with jurisdiction to (subd. 7):

"Cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, *except* as herein otherwise provided."

This exception, as held in Bardes v. Hawarden Bank and Bryan v. Bernheimer, supra, refers to the provisions of section 23, clauses "a" and "b" of the Bankruptcy Act, whereby the District Court is authorized, by the proposed defendant's consent and not otherwise, to entertain jurisdiction over claims made by trustees against strangers to the proceedings in bankruptcy to assert title to money or property in their possession; or, as expressed in Bryan v. Bernheimer:

"The exception refers to the provisions of section 23, by virtue of which, as adjudged at the last term of this court, the District Court can, by the proposed defendant's consent, but not otherwise, entertain jurisdiction over suits brought by trustees in bankruptcy against third persons to recover property fraudulently conveyed by the bankrupt to them before the institution of proceedings in bankruptcy."

This proposition was expressed in Whitney v. Wenman in this way:

"This case (Bryan v. Bernheimer) would seem to limit the effect of the decision in the Bardes Case to suits against third persons on account of transfers made before the bankruptcy. * * *"

Or as was finally and conclusively stated in Whitney v. Wenman:

"This section" (section 2 of the Bankruptcy Act of 1898), "in connection with section 23, was before this court for construction in the case of Bardes v. Hawarden Bank, 178 U. S. 524 [20 Sup. Ct. 1000, 44 L. Ed. 1175], in which case it was held that section 23b of the act as it then stood prevented the courts of the United States from entertaining jurisdiction over suits brought by trustees in bankruptcy to set aside fraudulent transfers of money or property made by the bankrupt to third parties before the institution of the bankruptcy proceedings, without the consent of the defendants."

The same proposition was recognized in Mueller v. Nugent, where the court said:

"The respondent had denied the jurisdiction on the ground that he had not received the money, or any part of it, after the petition in bankruptcy was filed."

See, also, In re Rathman, 106 C. C. A. 253, 183 Fed. 913.

According to these controlling decisions, the possession of property by the bankrupt at the time of the institution of the proceedings in bankruptcy is a necessary condition to jurisdiction in the District Court to determine the rights of third parties to it except when such jurisdiction is invoked by their consent. The possession may be in the bankrupt himself or by some one for him as his agent or bailee. Mueller v. Nugent, supra.

[2] In this case property of the bankrupt had been transferred to the bank several months before the bankruptcy proceedings were instituted, and the transferee's title to it seems not to be disputed. If Johnston had been the transferee of that property as he was of the Roadster, the trustee, according to the authorities already cited, could not have proceeded against him in the District Court without his consent, to set aside the transfer as fraudulent. Much more, we think, is it true that this summary proceeding in the District Court could not be resorted to to charge money received by Johnston from the proceeds of a fraudulent sale with a trust in favor of the creditors.

The possession of the subject-matter of the controversy was not in the bankrupt or the trustee. The property was therefore not in custodia legis or the subject-matter of administration by the court of bankruptcy. The rights of Johnston in and to the money and property acquired by him before bankruptcy proceedings were instituted against the Sales Company could in the absence of his consent be adjudicated only by a plenary suit in a court of competent jurisdiction as specified in section 23 of the Bankruptcy Act.

[3] There is another ground upon which our conclusion can rest. Let it be conceded, but not admitted, that the subject-matter of this controversy was constructively in the possession of the bankrupt at the time proceedings in bankruptcy were instituted in this case; even then, if the bankrupt or any one holding possession for it had asserted a right to it, adverse to the estate and in good faith, this right could not have been adjudicated by the bankruptcy court in a summary proceeding. Upon such a claim being made, it became the duty of the court to first enter upon an inquiry as to the good faith of the claim. If it should find there was a real as distinguished from a mere colorable claim, even though it might be fraudulent and voidable, it could proceed no further in that summary way, but should remit the trustee to his independent suit in a court of competent jurisdiction. Mueller v. Nugent, supra; Louisville Trust Co. v. Comingor, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413; In re Rathman, 106 C. C. A. 253, 183 Fed. 913.

Without discussing the merits of the present controversy or expressing any opinion upon them, we do not hesitate to say that Johnston presents some questions, arising from the peculiar facts of the case, that require serious consideration; and that he in good faith asserts a claim to the fund in controversy, which entitles him to a trial in due course rather than in a summary proceeding, which might result in imprisonment for an indefinite period.

An extraordinary proceeding, fraught with consequences like this, ought not to be resorted to unless the facts of the case clearly warrant it.

For either of the foregoing reasons the summary proceeding resorted to cannot be sustained. The judgment must be reversed, and the cause remanded to the District Court, with directions to dismiss it, without prejudice, however, to the right of the trustee to institute a suit in a court of competent jurisdiction for the recovery of the money in question.