In re DIALOGUE.

(District Court, D. New Jersey. September 22, 1916.)

1. BANKRUPTCY ⬯293(4)—JURISDICTION OF COURT—CONSENT.
    Where the wife of the bankrupt consented to the sale of the property, and released her inchoate dower interest for a percentage of the sale price, knowing that the proceeds of the sale would come into the possession of the trustee and that the agreement would have to be approved by the bankruptcy court, and her attorney was present when the agreement was approved and made no objection thereto, though he later testified that he was present only as attorney for the bankrupt, the wife consented that the bankruptcy court should have jurisdiction to determine the amount to which she was entitled under the agreement, if such consent was necessary to give the court jurisdiction under Bankr. Act July 1, 1898, c. 541, § 23b, 30 Stat. 552 (Comp. St. 1916, § 9607).
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 411.]

2. BANKRUPTCY ⬯293(1)—JURISDICTION OF COURT—DISPOSITION OF PROPERTY—DOWER OF BANKRUPT'S WIFE.
    Where the wife of a bankrupt agreed to release her inchoate dower interest in the property for a consideration and executed a conveyance to the trustees, the bankruptcy court had jurisdiction to determine the amount to which she was entitled under the agreement under Bankr. Act, § 2(7) (Comp. St. 1916, § 9586), giving the court summary jurisdiction to cause the estates of bankrupts to be collected, reduced to money, and distributed, and to determine controversies in relation thereto, since the pro-

ceeds of the sale of the bankrupt's property by the trustees from which the payment was to be made was in the possession of the court.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 411.]

In Bankruptcy. In the matter of John H. Dialogue, trading as John H. Dialogue & Son, bankrupt. On petition by Sarah G. Dialogue to review an order of the referee overruling petitioner's exceptions to the jurisdiction of the court to determine the amount to which petitioner was entitled under her agreement with the trustee for the release of her inchoate right of dower. Petition to review dismissed, and order of the referee affirmed.

See, also, 215 Fed. 462.

Wilson & Carr, of Camden, N. J., for trustee in bankruptcy.
French & Richards, of Camden, N. J., for respondent.

DAVIS, District Judge. The trustee in bankruptcy and respondent, wife of the bankrupt, entered into an agreement by the terms of which the respondent was to receive a certain percentage of the assets of her husband's estate in bankruptcy in lieu of her inchoate right of dower. The amount the respondent was to receive was not in any event to be less than $1,000. The trustee sold the property of the bankrupt estate and presented a check to the attorneys of the respondent for $1,229.68, the amount he found to be due her under the agreement. This amount was unsatisfactory to the respondent, who apparently differed with the trustee in bankruptcy in the interpretation of the agreement. She accordingly refused to accept the check, and the trustee filed a petition with the referee in bankruptcy, praying, inter alia, that "the court fix and determine the amount due the said Sarah G. Dialogue (respondent) under the said agreement." To this petition the respondent filed special answer, denying the jurisdiction of the court to grant the relief prayed for, and prayed that the petition of the trustee be dismissed.

The referee filed a memorandum sustaining the jurisdiction of the court and entered an order directing the respondent to answer the petition of the trustee within 10 days after service upon her of a copy of said order. The respondent filed her petition in this court for review of the order made by the referee. Eight errors were assigned by the respondent, none of which were discussed in the brief of the respondent and none were argued orally, except those which relate to the jurisdiction of the court, and counsel for respondent stated at the argument that the question of jurisdiction was the sole question to be determined by the review.

It is urged that section 23b of the Bankruptcy Act is applicable to this cause, which provides as follows:

"Suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt, whose estate is being administered by such trustee, might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant, except suits for the recovery of property under section 60, subdivision b, section 67, subdivision e, and section 70, subdivision e."

Under this section the bankruptcy court, it is contended, does not have jurisdiction of the case at bar, and cannot acquire it except by the consent of the respondent, or unless the controversy comes within one of the exceptions. It is admitted by both sides that it does not. The referee held that the court has summary jurisdiction under the provision of section 2 (7) of the Bankruptcy Act, which reads as follows:

"To cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, except as herein otherwise provided."

[1] The respondent has not in terms consented to the jurisdiction of the court, at least, no consent has been filed. On the contrary, she now contests the jurisdiction. If she has consented, that consent must be gathered from her acts. On May 7, 1915, the trustee sent a letter to Thomas E. French, Esq., of the firm of French & Richards, attorneys of the respondent, in which, inter alia, he said:

"That upon the execution and delivery to me of the deed, releasing her inchoate right of dower in the Atlantic City properties, and upon the execution by her and delivery to you in escrow of a deed to me as trustee for the meadow properties, that is to say, tracts F, G, H, and I, as shown upon the map already in your possession and referred to in my last letter to you, I, as trustee, will pay her, in cash, out of said estate, $1,000.00, and upon a sale of the said meadow tracts, and upon the delivery to me by you of the deed then held in escrow by you, I will pay her 8 per cent. of the present equity in said meadow tracts, but at least the sum of $1,000.00."

To this letter Mr. French, on May 12, 1915, replied:

"Pursuant to our conversation over the telephone this morning, I herewith send you the duplicate of your letter to me of May 7, 1915, with Mrs. Dialogue's acceptance at the end, upon the understanding that the term '8 per cent. of the present equity in said meadow tracts' means 'the proceeds after the payment of the amount then due upon mortgages on said tracts, taxes, and assessments on said tracts and any claims upon said tracts that would be superior to the dower of Mrs. Dialogue in said tracts, if she had a right of dower therein.' If you have any other construction of the term, please let me know at once."

In answer the trustee wrote:

"Your letter of May 12th, in this matter, expresses my understanding of the agreement. Of course, it is subject to the approval of the court as in other cases."

It was stated in open court at the argument upon the review by counsel of trustee, and not denied by counsel for respondent, that in pursuance of this agreement and before the order of the sale of the real estate of the bankrupt's estate the respondent had executed a deed and placed the same in escrow with her attorney, Thomas E. French, Esq., but that the same was not executed by her husband. The referee in bankruptcy approved the agreement between the trustee and the respondent in accordance with the letter of the trustee to Mr. French. At the time that the court approved the agreement, Mr. French was present in court. It is alleged by the trustee that he was there representing the respondent. This is denied by Mr. French, who says that he was there in the interest of the bankrupt, whom he

represented, and that he had gone there in pursuance of a notice of a meeting of creditors received by him as attorney of the bankrupt.

It appears from the above facts that the trustee was to sell the real estate, in which respondent had an inchoate right of dower, with the consent of the respondent. In the letter of the trustee of May 7, 1915, he said:

"I, as trustee, will pay her, in cash, out of said estate, $1,000.00, and upon a sale of the said meadow tracts, and upon the delivery to me by you of the deed then held in escrow by you, I will pay her 8 per cent. of the present equity in said meadow tracts, but at least the sum of $1,000.00."

This proposition was accepted in the following terms:

"Pursuant to our conversation over the telephone this morning, I herewith send you a duplicate of your letter to me of May 7, 1915, with Mrs. Dialogue's acceptance at the end."

The said meadow tracts were to be sold by the trustee in bankruptcy, an officer of the court, and in making the agreement with these facts in mind the respondent consented to the sale. She knew that the proceeds realized from the sale of the real estate in which she had an inchoate right of dower would come into the possession of the trustee, and that out of these she was to receive from him 8 per cent. of the present equity in the said meadow tracts, but at least the sum of $1,000.00. The respondent also knew, through her attorney, that this agreement was to be approved by the court. He was actually in court when the agreement was approved, and at no time was there any objection raised until the controversy arose between the respondent and the trustee, after the property had already been sold, money paid into the trust company, and when a distribution was being made. The conclusion is inevitable that the respondent consented to the jurisdiction of the court.

[2] In my opinion, however, consent of the respondent was unnecessary. This is a controversy which has arisen over property in the possession of the bankruptcy court. If the property was in the custody of the bankruptcy court, the jurisdiction of that court is exclusive, and it alone has the power to determine all claims upon the property in its custody. White v. Schloerb, 178 U. S. 542, 20 Sup. Ct. 1007, 44 L. Ed. 1183; Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814; Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405; Whitney v. Wenman et al., 198 U. S. 552, 25 Sup. Ct. 778, 49 L. Ed. 1157.

This phase of the question depends upon what constitutes possession, "custodia legis," for the purpose of assumption of jurisdiction by the bankruptcy court. Remington on Bankruptcy (2d Ed.) vol. 2, § 1807, says:

"Actual or constructive possession by the receiver, trustee, marshal, or referee, or (after the filing of the petition) by the bankrupt or his agents, constitutes 'custodia legis' for the purpose or 'assumption of jurisdiction' by the bankruptcy court; and the bankruptcy court 'assumes jurisdiction' over property, and the property comes into 'custodia legis,' if it is in the custody or control of the receiver in bankruptcy, or of the trustee, marshal, referee, or (after the filing of the bankruptcy petition) of the bankrupt or his agent."

In the case of Whitney v. Wenman et al., supra, the court said:

"In that case (Mueller v. Nugent [184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405]) the decisions in Bardes v. Hawarden Bank [178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175], White v. Schloerb [178 U. S. 542, 20 Sup. Ct. 1007, 44 L. Ed. 1183], and Bryan v. Bernheimer [181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814] were reviewed by the Chief Justice, who delivered the opinion of the court, and it was held that the filing of a petition in bankruptcy, is a caveat to all the world, and in effect an attachment and injunction, and that on adjudication title to the bankrupt's estate became vested in the trustee with actual or constructive possession, and placed in the custody of the bankruptcy court."

In the case of Acme Harvester Co. v. Beekman Lumber Co., 222 U. S. 300, on page 306, 32 Sup. Ct. 96, on page 99, 56 L. Ed. 208, the court said:

"Whatever may be the limitations of the doctrine declared by this court, speaking by the late Chief Justice Fuller in Mueller v. Nugent, 184 U. S. 1, 14 [22 Sup. Ct. 269, 46 L. Ed. 405], where it is said: 'It is as true of the present law (1898) as it was of that of 1867, that the filing of the petition is a caveat to all the world, and in effect an attachment and injunction (Bank v. Sherman, 101 U. S. 403 [25 L. Ed. 866]); and on adjudication, title to the bankrupt's property became vested in the trustee (sections 70, 21e), with actual or constructive possession, and placed in the custody of the bankruptcy court,' it is none the less certain that an attachment of the bankrupt's property after the filing of the petition and before adjudication cannot operate to remove the bankrupt's estate from the jurisdiction of the bankruptcy court for the purpose of administration under the act of Congress. It is the purpose of the bankruptcy law, passed in pursuance of the power of Congress to establish a uniform system of bankruptcy throughout the United States, to place the property of the bankrupt under the control of the court, wherever it is found, with a view to its equal distribution among the creditors. The filing of the petition is an assertion of jurisdiction with a view to the determination of the status of the bankrupt and a settlement and distribution of his estate. The exclusive jurisdiction of the bankruptcy court is so far in rem that the estate is regarded as in custodia legis from the filing of the petition."

And again on page 308 of 222 U. S., on page 99 of 32 Sup. Ct. (56 L. Ed. 208), the court further said:

"The filing of the petition asserts the jurisdiction of the federal court, the issuing of its process brings the defendant into court, the selection of the trustee is to follow upon the adjudication, and thereupon the estate belonging to the bankrupt, held by him or for him, vests in the trustee. Pending the proceedings the law holds the property to abide the decision of the court upon the question of adjudication as effectively as if an attachment had been issued, and prevents creditors from defeating the purposes of the law by bringing separate attachment suits which would virtually amount to preferences in favor of such creditors."

In re Schermerhorn, 145 Fed. 341, on page 342, 76 C. C. A. 215, on page 216, 16 Am. Bankr. R. 507, on page 509, the court said:

"Upon the filing of a petition in bankruptcy, followed by an adjudication, all property in the possession of the bankrupt of which he claims the ownership passes at once into the custody of the court of bankruptcy, and becomes subject to its jurisdiction to determine, by plenary action or summary proceeding, as the nature of the case demands, all adverse or conflicting claims thereto, whether of title or of lien; and that court may, by the process of injunction, protect its jurisdiction against interference. It may draw to itself the determination of all controversies over the property in its possession, and when it once lawfully attaches its jurisdiction cannot be destroyed or impaired by the unauthorized surrender of possession of the property by the officers of the court, or through a seizure thereof by an adverse claimant."

In Clay v. Waters, 178 Fed. 385, on page 392, 101 C. C. A. 645, on page 652, 21 Ann. Cas. 897, on page 901, 24 Am. Bankr. R. 293, on page 310, the court said:

"But the property here in controversy was in the possession of the bankrupt when the petition was filed and when the adjudication was made, and it then passed within the jurisdiction of the District Court below. The second section of the Bankruptcy Law invests the District Court sitting in bankruptcy with power to 'cause the estates of bankrupts to be collected, reduced to money and distributed and determine controversies in relation thereto except as otherwise provided,' and the exception is of cases involving those controversies between trustees in bankruptcy and adverse claimants specified in section 23, which relate to property which was not in the possession of the bankrupt when the petition for adjudication was filed and in which the defendants do not consent to suits in the District Courts. The District Court sitting in bankruptcy has jurisdiction to determine by summary proceedings, after a reasonable notice to claimants to present their claims to it, controversies between the trustee and adverse claimants over liens upon and the title and possession of (1) property in the possession of the bankrupt when the petition in bankruptcy is filed, (2) property held by third parties for him, (3) property lawfully seized by the marshal as the bankrupt's under clause 3 of section 2 of the Bankruptcy Law, and (4) property claimed by the trustee which has been lawfully reduced to actual possession by the officers of the court. Such controversies are controversies in proceedings in bankruptcy under section 2, and they are not controversies at law or in equity as distinguished from proceedings in bankruptcy within the meaning of section 23."

In the case of Johnson v. Spencer, 195 Fed. 215, on page 219, 115 C. C. A. 167, on page 171, 27 Am. Bankr. R. 800, on page 805, the court said:

"According to these controlling decisions the possession of property by the bankrupt at the time of the institution of the proceedings in bankruptcy, is a necessary condition to jurisdiction in the District Court to determine the rights of third parties to it except when such jurisdiction is invoked by their consent. The possession may be in the bankrupt himself or by some one for him as his agent or bailee."

In the case of Hebert v. Crawford et al., 228 U. S. 205, 33 Sup. Ct. 484, 57 L. Ed. 800, the court said:

"This conflict of jurisdiction, between state court and bankruptcy court, with injunction and counter injunction, grew out of a controversy as to who was in possession of a crop of rice, when Moore & Bridgeman, who had planted it, filed their petition on July 16, 1906, to be adjudged bankrupts. If the rice was then in their possession, the bankruptcy court had jurisdiction to administer it as assets of the estate, and to determine all claims to the property."

In the case at bar the property in which the respondent had an inchoate right of dower was in the possession of the bankrupt at the time of the filing of the petition in bankruptcy and of the adjudication. It then passed in accordance with the foregoing decisions into the possession of the bankruptcy court and was in "custodia legis." Being in possession of the property, the bankruptcy court had jurisdiction to determine all controversies relative thereto in a summary proceeding. In the case of Whitney v. Wenman et al., 198 U. S. 539, on page 552, 25 Sup. Ct. 778, on page 781, 49 L. Ed. 1157, on page 1160, 14 Am. Bankr. R. 45, on page 51, the court said:

"We think the result of these cases [Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814; Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405; Bardes v. Hawarden Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175; White v. Schloerb, 178 U. S. 542, 20 Sup. Ct. 1007, 44 L. Ed. 1183] is, in view of the broad powers conferred in section 2 of the Bankruptcy Act, authorizing the bankruptcy court to cause the estate of the bankrupt to be collected, reduced to money, and distributed, and to determine controversies in relation thereto, and bring in and substitute additional parties when necessary for the complete determination of a matter in controversy, that when the property has become subject to the jurisdiction of the bankruptcy court as that of the bankrupt, whether held by him or for him, jurisdiction exists to determine controversies in relation to the disposition of the same and the extent and character of liens thereon or rights therein."

In the case of Babbitt v. Dutcher, 216 U. S. 102, on page 113, 30 Sup. Ct. 372, on page 377, 54 L. Ed. 402, 17 Ann. Cas. 969, the court said:

"There are two classes of cases arising under the act of 1898 and controlled by different principles. The first class is where there is a claim of adverse title to property of the bankrupt, based upon a transfer antedating the bankruptcy. The other class is where there is no claim of adverse title based on any transfer prior to the bankruptcy, but where the property is in the physical possession of a third party or of an agent of the bankrupt, or of an officer of a bankrupt corporation, who refuses to deliver it to the trustee in bankruptcy. In the former class of cases a plenary suit must be brought, either at law or in equity, by the trustee, in which the adverse claim of title can be tried and adjudicated. In the latter class it is not necessary to bring a plenary suit, but the bankruptcy court may act summarily and make an order in a summary proceeding for the delivery of the property to the trustee, without the formality of a formal litigation."

In Re Epstein, 156 Fed. 42, 84 C. C. A. 208, 17 L. R. A. (N. S.) 465, 19 Am. Bankr. R. 89, the court said:

"A court of bankruptcy may by summary process require those who assert title to, or an interest in, property which has rightfully come into its possession and control as part of the bankrupt's estate, to present their claims to that court, and, the notice being reasonable, may proceed to adjudicate the merits of such claims."

In the case of Mound Mines Co. v. Hawthorne, 173 Fed. 882, 97 C. C. A. 394, 23 Am. Bankr. R. 246, the court said:

"The law is now settled that the interest of a third party in property claimed to belong to the bankrupt estate, which, at the time of the institution of the proceedings in bankruptcy, is in the possession of such third person, claiming an interest therein, can only be determined by an original suit brought for that purpose. Where, however, property which is in the possession of a bankrupt at the time of the bankruptcy proceedings, and passes as part of his estate into the possession of the trustee in bankruptcy, and a third party claims an interest therein, the referee may, by summary proceeding, require such third party to appear in the bankruptcy court, present his claim, and the referee adjudicate the rights of the parties in respect thereof."

In Re Lipman (D. C.) 201 Fed. 169, on page 172, 29 Am. Bankr. R. 140, on page 143, Judge Rellstab said:

"When such property (property which had been transferred by bankrupt within four months before the institution of proceedings under such circumstances as suggested the probability of an effort to defraud creditors) is obtained, whether willingly or reluctantly yielded, it is in the possession of the court exercising such ancillary jurisdiction, and that court, *by its very possession,*

draws to itself the power to determine the interests therein of all parties making claim thereto, and it becomes its duty to so determine and grant complete relief, that further litigation in regard thereto may be avoided."

Counsel for respondent cited the case of Eyster v. Gaff et al., 91 U. S. 521, 23 L. Ed. 403, as sustaining the contention that the court of bankruptcy in the instant case does not have jurisdiction. The case, however, does not support the contention. In that case a mortgage had been given upon certain property and a suit to foreclose the same in the state court had been instituted in 1868, and the suit was terminated, the purchaser receiving a master's deed, and a decree entered, on July 1, 1870. On May 9, 1870, the mortgagor filed a petition in bankruptcy. The assignee (receiver) in bankruptcy did not intervene, which he might have done in the state court, and might have had his rights adjudicated therein. These facts did not oust the state court of the jurisdiction which it had acquired more than two years before. The court on page 524 of 91 U. S. (23 L. Ed. 403) said:

"The obvious reason for this is that if, when the jurisdiction of the court has once attached, it could be ousted by the transfer of the defendant's interest, there would be no end to the litigation, and justice would be defeated by the number of these transfers. Another reason is that, when such a case is ended by a final decree transferring the title, that title relates back to the date of the instrument on which the suit is based, or to the commencement of the suit; and the court will not permit its judgment or decree to be rendered nugatory by intermediate conveyances."

In other words, when a competent court, state or federal, has regularly acquired jurisdiction, it will retain the same for the purposes for which it was acquired, and that is all this case decides. The case in fact sustains the contention of the trustee, in that the bankruptcy court in the instant case acquired custody of the property which was in possession of the bankrupt at the time of the filing of the petition, and therefore has exclusive jurisdiction to determine all controversies thereto.

The case of Frank v. Vollkommer, 205 U. S. 521, 27 Sup. Ct. 596, 51 L. Ed. 911, was cited. In that case Frank held a mortgage upon certain property, consisting of horses, vehicles, harness, etc., and took possession of the mortgaged property. Creditors of the mortgagor immediately thereafter filed petition in bankruptcy against him. An agreement was entered into between the mortgagee and the temporary receiver that the mortgaged property should be sold and the proceeds deposited, not in the general funds of the bankruptcy estate, but as a special fund. The res in this case never came into the possession of the bankruptcy court, except under a special agreement, which took it out of the general rule, and which contemplated a plenary suit. The trustee himself instituted a plenary suit in the state court to have the mortgage set aside as fraudulent. This case, therefore, is not authority for the contention of the respondent.

The petition for review is dismissed, and the order of the referee, striking out special appearance of respondent and directing her to answer, is hereby affirmed.