## In re ROMAN.

## Ex parte HELFAND.

Circuit Court of Appeals, Second Circuit.
January 20, 1928.

No. 395.

1. Bankruptcy ⊜288(6)—Property may be summarily ordered paid to bankrupt's trustee or receiver only if it belongs to bankrupt and is colorably retained.

Bankruptcy court may summarily order property or money to be paid to bankrupt's trustee or receiver only if such money or property belongs to bankrupt and is colorably retained by another.

2. Bankruptcy ⊜288(1)—Syndicate's executory contract to pay specified sum to bankrupt in settlement of claim held not summarily enforceable by bankruptcy court.

Syndicate's executory agreement to pay bankrupt a specified sum in settlement of his claim of interest in capital stock in certain corporation, on bankrupt's procuring consents and releases of claims of all his creditors satisfactory to syndicate, held not summarily enforceable by bankruptcy court by order directing syndicate to pay agreed sum to bankrupt's trustee or receiver, even if its refusal to make payment was merely colorable, since it had no property of bankrupt, but had merely broken its promise, which made it liable to action for damages.

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of Julio E. Roman, bankrupt. From an order of the court sitting in bankruptcy, summarily directing the Creole

Syndicate to pay $175,000 to Marcus Helfand, bankrupt's receiver, now his trustee, said Syndicate appeals. Reversed, and order to show cause discharged.

Roman, the bankrupt, in 1920 entered into a contract with McCornick and Thompson, as trustees, which gave him a 15 per cent. interest in the capital shares of a corporation which was to take over oil properties in South America on which Roman had an option. The corporation, the Creole Syndicate, was formed, took over the properties, and issued 1,000,000 shares of stock. Roman claimed his interest under the contract, and, disputes arising, in April, 1926, brought suit in the New York Supreme Court against the syndicate and others, among other things praying that he be awarded his share. The cause was at issue in October, 1926, when Roman and the defendants came to a tentative agreement of settlement, by which the syndicate promised to pay Roman $175,000 in full discharge of its liability and in exchange for his interest in the stock.

The terms of this agreement were in some dispute. It was never put into writing, and was first stated, so far as any records disclose, when the parties applied on October 26, 1926, for an adjournment of the cause. At that time the syndicate's counsel stated in open court that, since there was a possibility that the settlement might fall through, the cause should be kept alive; that many details must be arranged regarding the adequate protection of the defendants; that Roman had made various assignments, which might fail of satisfactory elimination. The cause was adjourned from time to time, and eventually in May, 1927, Roman made an effort by supplemental summons to bring in all his assignees and lienors, but, as the suit never went to decree, this attempt was abortive.

At the time of the first negotiations of settlement Roman had already made various dispositions of his interest, and thereafter these increased in number—at least, the syndicate continued to receive notice of more—so that by the spring of 1927 there were in all some 24 claimants of different kinds. Not only did these include partial assignments, but several of Roman's creditors had got judgments against him, in one or more instances followed by receivers in supplementary proceedings. Meanwhile the parties were in correspondence, and Roman was trying to comply with the syndicate's requirements. The letters are material, not because they show that any final agreement had ever been concluded, but only as indicating the conditions on which the syndicate would consent to make any payment at all. On November 15, 1926, its attorneys wrote that it wished, not only consents from all creditors, but releases in the form prepared by it. This demand for releases was repeated on November 24, 1926, and on January 5, 1927, at the conclusion of a long letter stating its position, it repeated that it was prepared to pay the money, but only after the conditions in its letters of November 15th and 24th should be carried out.

The parties were still at odds on April 18, 1927, when a petition in bankruptcy was filed against Roman, and one Helfand, the appellee, was appointed his receiver, who has become trustee since the appeal was taken. On April 25th the receiver got an order requiring the syndicate to show cause why it should not pay to him the amount of the settlement. Voluminous affidavits were submitted on both sides, from which it is difficult to ascertain which of the claimants against Roman's interests had not consented at the end of May, 1927, when the order appealed from was granted, and what were their claims. It is agreed, however, that some remained who had given no consents; the syndicate asserts that seven had either not consented at all, or that their consents were unsatisfactory; the receiver, that only four had failed to consent, and that these had no rights against Roman in any case. Of those who had not consented, two were outside the Southern district of New York, but the total amount of all those not consenting did not equal the amount of the proposed settlement.

The District Judge on May 27, 1927, directed the syndicate to pay over the whole amount agreed, and assumed to discharge it from all liability to any of the claimants. He reserved against the fund all rights as they existed when the payment should be made, fixed the fee of Roman's attorney in the New York suit, and directed all claimants to present their claims in the bankruptcy court. Roman, who had originally joined in showing cause, eventually consented to the motion, and allowed himself to be adjudicated. The syndicate disputed the summary jurisdiction of the bankruptcy court, asserted that no contract had been made, or, if so, that the promised payment was conditional upon its satisfaction with the protection tendered to it against the claimants, and insisted that it had never been satisfied.

Walter Gordon Merritt, of New York City, for appellant.

Jacob M. Mandelbaum, Daniel F. Cohalan, and William P. Maloney, all of New York City, for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). [1, 2] The trustee's application necessarily presupposes that the syndicate has money, the property of the bankrupt, which it colorably retains. Such a position alone could justify summary action by the bankruptcy court. Bryan v. Bernheimer, 181 U. S. 188, 21 S. Ct. 557, 45 L. Ed. 814; Taubel v. Fox, Trustee, 264 U. S. 426, 44 S. Ct. 396, 68 L. Ed. 770; May v. Henderson, 268 U. S. 111, 45 S. Ct. 456, 69 L. Ed. 870. Possibly the syndicate unjustly refuses to give Roman his interest in the stock; that was the subject of the New York suit, and is still undetermined. Nobody suggests that the bankruptcy court could summarily dispose of that litigation by directing the performance of that contract, or the surrender of that stock. The theory is, however, that the same court may direct the performance of the agreement of settlement, a subsequent, independent, executory contract, because that performance is property of the bankrupt, like a chattel in the promisor's hands. It may be that this chose in action was itself property, as much in the possession of the bankruptcy court as any chose in action can be. If so, then the bankruptcy court may perhaps draw to itself the summary determination of who is the proper obligee, and the obligor could, if that be true, safely recognize whichever obligee succeeded. So much in any case appears to have been decided in Re Ransford (C. C. A. 6) 194 F. 658, and Orinoco Iron Co. v. Metzel (C. C. A. 6) 230 F. 40, though the opposite was held in Copeland v. Martin (C. C. A. 5) 182 F. 805. See, also, In re Kelley (D. C.) 297 F. 676. We need not decide that question, because the order does not stop there; it compels the obligor to perform, and, as we have said, can proceed only on the notion that not only the obligation is property of the bankrupt, but that its performance is also such before it has been performed. It is, indeed, true that title may change, and property vest, by reason of a contract alone—for instance, a contract of sale. This is not such a case. Nobody can maintain that, before the payment is made, the bankrupt has any property in the syndicate's hands. Even though its refusal were no better than colorable, its property remained its own; it had only broken its promise, and, like any other promisor, was liable to an action for damages. Thus, not only is the order a decree of specific performance, where no such remedy exists, but it ignores the distinction between the obligation to perform and the consequences of performance. It would not be permissible to collect even a bank deposit due a bankrupt by these means. So far as possession can be imputed to such property at all, it is confined to the rights of the bankrupt to enforce the promise. The trustee must proceed as the bankrupt must have proceeded, in a court having competent jurisdiction in such causes. This was clearly the distinction which the court had in mind in Board of Trade v. Johnson, 264 U. S. 1, 44 S. Ct. 232, 68 L. Ed. 533, where the discussion turned entirely upon whether a seat in a trading exchange was property or a chose in action, and where the decision depended upon the view that it was property. Where procedural questions are at stake, such differences go to the essence, and we could not affirm the order without vesting in the bankruptcy court power summarily to try actions in contract, at least so far as to decide whether the defense is real.

Hence we need not decide whether the syndicate's refusal was colorable, though in fact there was no ground for saying that it was. The agreement must in such a proceeding be taken as made in the terms which the respondent asserts. The syndicate says that the settlement required Roman to satisfy it that the consents and releases would protect it, and that it was in fact dissatisfied. Even were it permissible to inquire whether that dissatisfaction was merely a cover to evade its obligation, we should have no warrant so to hold. Certain of the claimants had not consented at all; some had consented in documents which the syndicate rejected, a rejection which for aught that appears may have been in good faith. Nor does it follow, though the aggregate claims of those who had not consented, or whose consent was unsatisfactory, did not exhaust the whole agreed amount, that the syndicate was bound to pay the uncovered balance. The agreement was that all claims should be brought in, and did not contemplate the syndicate's remaining stakeholder in a suit between Roman and any claimant to a part of the payment. It was entitled to be quit of the whole controversy by a single payment, or to contest the suit on the merits.

Order reversed; order to show cause discharged.